558 A.2d 166

Orien T. Deveaux, a minor, by her parent and natural guardian, Belinda L. Deveaux and Belinda L. Deveaux, in her own right, Appellants *v.* Robert R. Palmer, Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund, Commonwealth of Pennsylvania, Kathy Marter, Federal Home Life Insurance Company, Appellees.

Orien T. Deveaux, a minor, by her parent and guardian, Belinda L. Deveaux, and Belinda L. Deveaux, in her own right, Appellants *v.* Robert R. Palmer et al., Appellees.

Argued December 14, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, BARRY, COLINS, PALLADINO, MCGINLEY and SMITH.

*T. J. Scully,* with him, *Jack E. Feinberg,* Of Counsel: *Feinberg & Silva,* for appellants.

*Eric B. Schnurer,* Deputy General Counsel, for appellee, Pennsylvania Medical Professional Liability Catastrophe Loss Fund.

*Glenn C. Equi,* with him, *James A. Vinarski,* for appellees, Kathy Marter and Marsh & McLennan, Inc.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., May 8, 1989:

Orien Deveaux, a minor, and her mother appeal two Philadelphia Common Pleas Court orders[1] sustaining the

---

[1] These appeals were consolidated by this Court's April 5, 1988 Order.

preliminary objections of the Pennsylvania Medical Professional Liability Catastrophe Loss Fund (Fund), Kathy Marter (Marter) and Marsh and McLennan, Inc. We affirm.

Deveaux brought a medical malpractice action against a physician and a hospital (defendants) for injuries sustained during her birth. That matter was settled before trial by agreement under which the defendants would pay Deveaux an initial $800,000. The remaining $1,000,-000 was to be set aside in a structured settlement.[2] According to Deveaux's complaint, the plaintiff and defendants' counsel were to investigate maximum yield annuity options as a condition of settlement.[3] Deveaux's counsel proposed a Federal Home Life Insurance Company (Federal Home Life) annuity conforming to the agreement, with an annual yield of $99,961. The Fund, insurer of the defendants, expressed reservations about the purchase of this annuity, because the Federal Home Life broker was not approved by the Fund.[4]

Deveaux's complaint states that Fund officials breached the settlement agreement by disclosing the terms of the Federal Home Life annuity option to Marter, an agent for Marsh and McLennan—a competing provider. The complaint avers that Marter advised Federal Home Life that Deveaux's counsel was not authorized to contact the provider, causing Federal Home Life to withdraw its offer. Deveaux asserts that Marter and the Fund's

---

[2] Under the structured settlement terms, the parties were required to use the settlement amount to purchase an annuity yielding three percent cumulative annual increases throughout Deveaux's life or thirty years, whichever was longer. Complaint of Orien Deveaux, para. 17.

[3] *Id.*

[4] *Id.*, para. 22.

Fund's interference in the Federal Home Life annuity resulted in a $6.85 million loss to her.[5]

Our scope of review of a common pleas court order sustaining preliminary objections and dismissing a complaint is limited to a determination of whether the trial court erred as a matter of law or committed a manifest abuse of discretion. *General Accident Insurance Co. v. City of Philadelphia,* 114 Pa. Commonwealth Ct. 528, 539 A.2d 59 (1988).

On appeal, Deveaux initially contends that the common pleas court erroneously relied on the statutory guarantee of sovereign immunity, Section 8521 of the Judicial Code[6] to bar her claim against the Fund. She argues that the Fund is not immune because it is an independent insurance carrier undertaking a proprietary function.[7] We disagree.

The Fund, an *executive agency* of the Commonwealth, was established pursuant to the Health Care Services Malpractice Act (Act)[8] *Judge v. Allentown and Sacred Heart Hospital Center,* 506 Pa. 636, 487 A.2d 817 (1985), *on remand,* 90 Pa. Commonwealth Ct. 520, 496 A.2d 92 (1985), and is a Commonwealth party for purposes of sovereign immunity. Section 8501 of the Judicial Code.[9]

---

[5] The $6.85 million damage figure represents the difference in the Federal Home Life annuity yield compared with that of the next highest offer over the projected seventy-five year life span of a three year old girl. Record Item, attachment to Deveaux's civil complaint.

[6] 42 Pa. C. S. §8521.

[7] We note that distinctions between governmental and proprietary functions no longer determine which governmental actions are cloaked in immunity. *Faiella v. Bartoles,* 102 Pa. Commonwealth Ct. 258, 517 A.2d 1019 (1986).

[8] Article VII of the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §§1301.701—1301.1006.

[9] 42 Pa. C. S. §8501.

Deveaux nonetheless maintains that the legislature intended to isolate monies in the Fund from the Commonwealth's General Fund; therefore, she asserts that the Fund is an independent trust not protected by sovereign immunity.

Section 701(2) and (4) of the Act provides that Fund liability is separable from the Commonwealth's General Fund. 40 P.S. §§1301.701(2) and (4). However, similar measures of independence have been granted to the State Workers' Insurance Fund, 77 P.S. §221, and State Employees' Retirement System Funds, 71 Pa. C. S. §5901, which are administered by executive agencies and afforded sovereign immunity. *Nagle v. Insurance Department,* 46 Pa. Commonwealth Ct. 621, 406 A.2d 1229 (1979); *United Brokers Mortgage Co. v. Fidelity Philadelphia Trust Co.,* 26 Pa. Commonwealth Ct. 260, 363 A.2d 817 (1976).

Like these funds, the medical professional liability "CAT" Fund serves the dual governmental function of providing reasonably priced professional malpractice insurance to Commonwealth health care providers and insuring that injured persons will obtain prompt and fair compensation for their claims. *Ohio Casualty Group of Insurance Companies v. Argonaut Insurance Co.,* 514 Pa. 430, 525 A.2d 1195 (1987). Therefore, we hold that as an executive agency, the Fund is protected by sovereign immunity.

Deveaux alternatively maintains that her complaint established liability under the personal property exception to sovereign immunity. Section 8522(b)(3) of the Judicial Code[10] imposes liability for damages caused by "the care, custody or control of personal property in the possession or control of Commonwealth parties, includ-

---

[10] 42 Pa. C. S. §8522(b)(3).

ing Commonwealth-owned personal property and property of persons held by a Commonwealth agency. ..."

Exceptions to sovereign immunity are to be narrowly construed. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). The personal property exception has been held to apply only in cases where it is alleged that the property *itself* caused injury. *Nicholson v. M & S Detective Agency, Inc.,* 94 Pa. Commonwealth Ct. 521, 503 A.2d 1106 (1986).

While it is true that Fund monies are personal property, Deveaux's assertions of third-party interference with the performance of a contract between Federal Home Life and the parties to the settlement agreement cannot in any way be construed to raise a cognizable claim that the care, custody or control of the property—that is, the money itself—caused her injuries. Thus, we hold that the common pleas court correctly concluded that Section 8522(b)(3) of the Judicial Code was inapplicable and dismissed Deveaux's action against the Fund.

As to Deveaux's action against Marter and Marsh and McLennan for tortious contractual interference,[11] those

---

[11] Deveaux's counsel failed to respond to those defendants' preliminary objections. Deveaux asserts that the trial court's dismissal was erroneous because she was never served with the preliminary objections; therefore, she had no opportunity to respond. Rule 440 of the Pennsylvania Rules of Civil Procedure permits service of legal papers, other than original process, by First Class U.S. Mail. The evidence of a proof of service by mail form raises the rebuttable presumption that it has been received by the addressee. *Franklin Interiors, Inc. v. Browns Lane, Inc.,* 227 Pa. Superior Ct. 252, 323 A.2d 226 (1974). Here, the record reveals that the preliminary objections were filed with the common pleas court prothonotary and served on Deveaux's counsel by first class mail twice. Common pleas court docket entry, 9/14/87, Defendants' preliminary objections. Deveaux's counsel's representation to the contrary is insufficient to rebut the presumption that the preliminary objections were received. Deveaux's alternate assertion that the common pleas court should have granted her the opportunity to amend her complaint,

defendants filed the following preliminary objections: (1) a motion to strike the complaint for failure to conform with Pennsylvania Rules of Civil Procedure pertaining to pleading specificity;[12] (2) a motion for a more specific pleading to remedy the inadequacies averred in the motion to strike; and (3) a demurrer.

The trial court sustained these preliminary objections at motions court; however, it failed to file an opinion detailing reasons for dismissing Deveaux's actions. Although the trial court's failure to file an opinion violated Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, we are cognizant that we can affirm if the trial court's order can be upheld on any ground. *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 604, n.5, 327 A.2d 94, 96, n.5 (1974).

Of the defendants' three preliminary objections, we need only address the demurrer because the preliminary objections attacking the sufficiency of the pleadings sought remedial rather than dispositive relief. The de-

---

citing *Robinson v. Tool-O-Matic, Inc.*, 216 Pa. Superior Ct. 258, 263 A.2d 914 (1970), is misplaced. That case held that while a court may, in its discretion, permit a plaintiff to amend his or her pleading, a plaintiff's failure to request leave to amend constitutes a waiver of those rights. The record in this case reveals that Deveaux *failed to request leave to amend* the complaint before the trial court. That failure constitutes a waiver.

[12] The preliminary objections alleged that Deveaux's complaint violated Pa. R.C.P. No. 1020(a) in that Deveaux failed to specify which defendants allegedly breached or tortiously interfered with the performance of a settlement agreement; which contract was allegedly breached or tortiously interfered with; and the failure to plead separate causes of action for breach or tortious interference in the performance of a contract. Record Item, plaintiffs' complaint, paras. 23, 26, 27. In addition, the defendants alleged a violation of Pa. R.C.P. No. 129(b), in that the complaint failed to give notice whether such a contract was oral or written; and if written, that the plaintiffs failed to attach a copy of the writing to the complaint.

murrer, however, could warrant conclusive termination of the action on the pleadings.

Therefore, we will look to the demurrer to determine if Deveaux's complaint was sufficient to establish a claim, keeping in mind that a preliminary objection in the nature of a demurrer cannot be sustained and the complaint dismissed unless with certainty no recovery is possible. If any theory of law will support the claim, a dismissal is improper. *Cianfrani v. State Employees' Retirement Board,* 505 Pa. 294, 479 A.2d 468 (1984). A demurrer admits as true all well-pleaded facts, but does not admit conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Department of General Services v. Celli-Flynn,* 115 Pa. Commonwealth Ct. 494, 540 A.2d 1365 (1988).

Deveaux's complaint essentially averred that Marter's actions in contacting Federal Home Life constituted tortious interference in the *performance* of a contract. Paras. 26, 29, 3 2 .

Pennsylvania has adopted the Restatement of Torts definition of tortious interference in the performance of a contract. *Consolidation Coal Co. v. District 5, United Mine Workers of America,* 336 Pa. Superior Ct. 354, 485 A.2d 1118 (1984). Section 766 of the Restatement (Second) provides:

> one who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

In order to establish a claim under the above section, Deveaux would have had to plead that she was a party to a valid contract and that Marter and Marsh and Mc-

Lennan interfered in the *performance* of that contract. However, a review of the complaint discloses that Deveaux failed to establish the existence of any contract.

As to the existence of a contract embodied in the court-approved settlement agreement among the parties to the original tort action—Deveaux and the hospital medical staff—Federal Home Life was *not* a party in that action, but was merely alleged to be a potential annuity provider.[13] Therefore, Marter and Marsh and McLennan's actions could not, as a matter of law, have constituted tortious interference in the performance of the settlement agreement.[14] An averment of a contractual relationship is not sufficient to withstand a demurrer if it is apparent that such a relationship did not occur. *Lerman v. Rudolph,* 413 Pa. 555, 198 A.2d 532 (1964). We conclude from Deveaux's complaint, that any averment of Federal Home Life's participation in the settlement agreement is an inference not justified by the pleadings.

The complaint also states that "the conduct of the defendants ... was an intentional interference in the performance of said contract ... in that they did cause ... Federal Home Life Insurance Company, *to withdraw its bid* ...."[15]

That allegation, and similar allegations in the complaint, establish only that Federal Home Life submitted a bid to provide an annuity. Thus, Deveaux failed to allege the requisite assent necessary to establish the existence of a contract between her and Federal Home

---

[13] Complaint, paras. 19, 20(a), 22, 23.

[14] Paragraph 25 of the complaint alleged that "the conduct of the defendants intentionally and improperly interfered with the performance of the settlement contract which was entered into with everyone's authority and approval before Judge SUGERMAN on July 17, 1985, by inducing defendant, Federal Home Life Insurance Company, not to perform the contract which it proffered."

[15] Record Item, Complaint, para. 29.

Life. Moreover, the complaint established that *the CAT Fund* was vested with the authority to accept the proposal, which it was unwilling to do at the time of the alleged tortious interference.

As a matter of law, Deveaux's complaint fails to state facts sufficient to establish the requirements of tortious interference in the performance of a contract by Marter or Marsh and McLennan. Therefore, we affirm the common pleas court's dismissal of her complaint.

### ORDER

The orders of the Philadelphia County Common Pleas Court, No. 1603 July Term 1987, dated October 15, 1987, and November 16, 1987, are affirmed.

Judge COLINS dissents.