**Daniel LEMON, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 15, 2000.

Decided Dec. 4, 2000.

---

3. The Commission made an additional finding of "cruelty" which Gow did not contest.

Robert L. Johnson, Washington, for appellant.

Marc A. Werkinsky and Timothy P. Wile, Asst. Counsel, In-Charge, King of Prussia, for appellee.

Before DOYLE, President Judge, LEADBETTER, Judge, and LEDERER, Senior Judge.

DOYLE, President Judge.

Daniel Lemon appeals from an order of the Court of Common Pleas of Washington County denying his statutory appeal from a one-year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (Department).

By official notice dated September 21, 1997, the Department notified Lemon that his operating privilege was scheduled to be suspended for one year pursuant to Section 1547(b)(1) of the Vehicle Code (Code),

*as amended,* 75 Pa.C.S. § 1547(b)(1), for his refusal to submit to chemical testing on September 9, 1997. Lemon appealed the suspension, and a *de novo* hearing was held before the trial court.

The following facts were established at the hearing. At approximately 11:10 p.m. on September 9, 1997, Officer Brian Douglass of the Cecil Township police force observed Lemon's car traveling at a high rate of speed and criss-crossing the solid yellow line more than six times in the space of half a mile. Officer Douglass activated his emergency lights, ordered Lemon to stop his vehicle, and then detected a strong odor of alcohol on Lemon's breath, bloodshot eyes, and an inability to maintain balance without difficulty. Lemon refused to complete the field sobriety tests and Officer Douglass arrested him for driving under the influence of alcohol and transported him to the Cecil Township Police Department for breath testing.

Officer Douglass, a certified breath tester, read Lemon the implied consent warnings from the DL–26 form and instructed Lemon on how to take the test. Officer Douglass then testified as follows:

Q. What happened on the first attempt to obtain a breath sample?

A. He would place his tongue over the hole on the mouthpiece. He gave an insufficient sample.

\* \* \* \*

Q. What did you tell him about that?

A. I instructed him once again how to blow correctly.

Q. Did you tell him what would happen or what it would be if he refused to blow correctly?

A. Yes, I did.

\* \* \* \*

Q. Did you ask him to give you another sample?

A. Yes, I did.

\* \* \* \*

Q. Okay. Do you recall what he was doing?

A. He would start blowing, stop blowing, start blowing, stop blowing. Air would come out from around the mouthpiece.

Q. And what happened after that?

A. It gave him a third attempt. After the third attempt it was marked as refusal.

\* \* \* \*

Q. At anytime [sic] did Mr. Lemon tell you that he had a problem blowing in the machine?

A. No.

(Notes of Testimony dated January 28, 1998, pp. 9–10.) Shortly after the test was concluded, Lemon's wife arrived at the police station and Lemon requested transport to a local hospital for a blood test. Officer Douglass declined.

At the hearing on January 28, 1998, Lemon testified that he had a history of breathing problems, including emphysema, for which he utilizes inhalers. In addition, he testified that he tried to the best of his ability to complete the test, but that he was unable to do so because of his emphysema and his medications. He also testified that, immediately after failing the test, he requested that he be transported to a local hospital to undergo a blood test and that his offer was refused. Lemon offered into evidence, over the Department's objection, a hospital report of the results of pulmonary function tests administered by Lemon's physician at the Cannonsburg Hospital on December 18, 1997, for the purpose of establishing his pulmonary problems.

Lemon's wife, Jacqueline, also testified as to his breathing problems and corroborated his testimony that he requested to be transported to a local hospital to undergo a blood test.

Common Pleas left the record open for sixty days to provide Lemon with an opportunity to supplement the record with expert medical testimony interpreting the results of the pulmonary function tests. When this was not done, an order was issued denying Lemon's appeal, without opinion.

On appeal to this Court,[1] Lemon argues that having attempted to complete the test and having then informed the officer that he had pulmonary problems, the refusal to accord him a blood test at a nearby hospital was unreasonable. Moreover, he also argues that, where an arresting officer can choose the type of testing to be administered, and can request subsequent testing under special circumstances, that a licensee should also be able to request alternative chemical testing where it is practicable. Finally, he challenges the order of the Common Pleas Court on the basis that there was no Rule 1925(a) opinion issued.

We note initially that Common Pleas failed to issue an opinion under Pa. R.A.P.1925.[2] Ordinarily, the remedy for non-compliance with Pa. R.A.P.1925(a) is a remand to the trial court with directions that an opinion be prepared and returned to the appellate court. Nevertheless, the record in the instant matter is sufficient for appellate review; all of the issues raised are issues of law; and we may affirm if Common Pleas' order can be upheld on any ground. *See, e.g., Otte v. Covington Township Road Supervisors*, 539 Pa. 44, 49, 650 A.2d 412, 414 (1994);

1. Our standard of review is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether it committed an error of law or abuse of discretion in reaching its decision. *Carlin v. Department of Transportation, Bureau of Driver Licensing*, 739 A.2d 656 (1999), *petition for allowance of appeal denied,* — Pa. ——, 759 A.2d 924 (2000).

2. The Pennsylvania Rules of Appellate Procedure require a trial court, upon notice of appeal from an order issued by that court, to file an opinion detailing the reasons for the order or to specify in writing the place in the record where such reasons may be found. Pa. R.A.P.1925(a). The purpose of the rule is to provide the appellate court with a reasoned basis for the trial court's order.

Gilbert v. Korvette's, Inc., 457 Pa. 602, 604 n. 5, 327 A.2d 94, 96 n. 5 (1974); DeVeaux v. Palmer, 125 Pa.Cmwlth. 631, 558 A.2d 166 (1989).

■■■ It is well settled that to sustain a license suspension under Section 1547 of the Code, the Department has the burden of establishing that the licensee: (1) was arrested for drunken driving by a police officer with reasonable grounds to believe that the motorist was operating a motor vehicle while under the influence of alcohol; (2) was requested to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal would result in a license suspension. Department of Transportation, Bureau of Traffic Safety v. O'Connell, 521 Pa. 242, 249–50, 555 A.2d 873, 876 (1989). Once the Department meets this burden, the licensee must then establish that his refusal was not knowing or conscious or that he physically was unable to take the test.[3] Here, it is undisputed that the Department met its burden under O'Connell. While Lemon testified that he had not been drinking, and that the behavior observed by Officer Douglass was caused by the medications he was taking, he did not challenge Officer Douglass' reasonable grounds to arrest him for driving under the influence.

■■■ Whether the conduct at issue constitutes a refusal is a question of law reviewable by this Court. Department of Transportation, Bureau of Driver Licensing v. Kilrain, 140 Pa.Cmwlth. 484, 593 A.2d 932 (1991), petition for allowance of appeal denied, 529 Pa. 625, 600 A.2d 541 (1991). Furthermore, it is well established that anything less than a licensee's unqualified cooperation in completing the test constitutes a refusal under Section 1547 of the Code. Department of Transportation, Bureau of Traffic Safety v. Mumma, 79 Pa.Cmwlth. 108, 468 A.2d 891 (1983). In addition, even a licensee's good faith attempt to comply with the test constitutes a per se refusal where the licensee fails to supply a sufficient breath sample. Pappas v. Department of Transportation, Bureau of Driver Licensing, 669 A.2d 504 (1996). Moreover, the law is quite clear that, where a licensee suffers from a medical condition that affects his ability to perform the test and that condition is not obvious, the finding that a driver was unable to take the test for medical reasons must be supported by competent medical evidence. Department of Transportation, Bureau of Driver Licensing v. Wilhelm, 156 Pa. Cmwlth. 24, 626 A.2d 660 (1993). After examining the record under these guidelines, we must conclude that Lemon's refusal and alleged "inability" to supply the required breath samples clearly constituted a refusal as a matter of law because Lemon did not advance any medical evidence to support a conclusion that he was medically unable to complete the test.

The Department relies on Department of Transportation v. Gross, 146 Pa. Cmwlth. 1, 605 A.2d 433 (1991), where this Court held that a licensee's refusal to take a breath test was sufficient grounds for suspending the licensee's operating privilege even though the licensee subsequently requested alternative blood testing. Gross agreed to submit to a breath test, which she was unable to complete because of her allergies. She testified that she had informed the testing officer of her allergies and requested a blood test at the local hospital. Although the officer could not recall whether Gross had said she had allergies, he recorded a refusal after two insufficient tests. Common Pleas resolved this evidentiary conflict in favor of Gross and sustained her appeal. We reversed concluding that, while Gross' testimony was credible, it was not competent, and that her "refusal to submit to breath testing was not vitiated by her request to submit to a blood test." Id. at 436.

■■■ Here, Lemon conceded that he knew he had emphysema even though he

---

**3.** Lemon does not contest that he was informed of the Implied Consent Law and the O'Connell warnings and that he refused to submit to chemical testing.

had not yet been diagnosed with the condition. It is immaterial whether Lemon failed to inform Officer Douglass of his breathing problems prior to taking the test, for it is his failure to produce competent medical evidence of his underlying pulmonary problems that results in our decision today. There is every indication that Lemon was willing to take a blood test, but his refusal to take the breath test is sufficient grounds for the suspension of his operating privilege. *Gross.*

Lemon also argues that under Section 1547(i), "[a]ny person involved in an accident or placed under arrest for a violation of Section 3731 [driving under the influence] may request a chemical test of his breath, blood, or urine. Such requests shall be honored when it is reasonably practicable to do so." 75 Pa.C.S. § 1547(i). He asserts that the hospital was within fifteen minutes of the police station and that, therefore, his request was reasonable. This argument is equally unavailing. It is well settled that the police officer, not the licensee, has the option to choose the type of chemical test to be performed. *Gross.* We have consistently held that Section 1547(i) does not afford a licensee a choice among the three tests listed; rather it is the police officer who has the option to choose the type of chemical test to be administered and Section 1547(i) is specifically limited to situations where no test has been requested by the arresting officer. *Gross,* 605 A.2d at 436.

Accordingly, the order of the Washington County Court of Common Pleas is affirmed.

### *ORDER*

**NOW,** December 4, 2000, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby affirmed.