Donna BERMAN

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 19, 2003.
Decided Feb. 19, 2004.

Terrance M. Edwards and Timóthy P. Wile, Asst. Counsel In-charge, Harrisburg, for appellant.

F. Emmett Fitzpatrick, Philadelphia, for appellee.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), appeals from the April 17, 2003, order of the Court of Common Pleas of Philadelphia County (trial court), which granted Donna Berman's (Licensee) appeal from the one-year suspension of her driving privileges imposed by DOT pursuant to section 1547 of the Vehicle Code.[1] We reverse.

Licensee was placed under arrest for driving under the influence of alcohol (DUI). A police officer asked Licensee to submit to a breath test, and Licensee con-

sented to taking the test. Licensee gave no medical reason why she could not provide sufficient breath samples for the breathalyzer. However, Licensee tried eight times to provide sufficient breath samples and was unable to do so. As a result, the breathalyzer machine registered a refusal, and DOT suspended Licensee's driving privileges.

Licensee filed an appeal with the trial court, which held a *de novo* hearing on the matter. Officer Beatrice Kennedy testified regarding Licensee's unsuccessful attempts to provide sufficient breath samples for the breathalyzer. Officer Kennedy testified that she did not ask Licensee whether Licensee had any medical conditions that might affect her blowing into the breathalyzer machine because a nurse already had asked that question. Officer Kennedy stated:

> When she first came in she saw a nurse first in the presence of me. The nurse asked her if she had any medical problems which she wanted to address. So, on hearing this and being cleared by the nurse, I knew that she had no medical reasons, nor did she ask, nor did she admit to having medical reasons for not blowing.

(R.R. at 38a.)

Licensee did not testify on her own behalf, but she offered the testimony of Bertram J. Channick, M.D. Dr. Channick testified that Licensee consulted with him after her DUI arrest, and he determined that Licensee did not provide adequate breath samples because Licensee has a condition called hyperventilation syndrome. Dr. Channick explained:

---

[1]. 75 Pa.C.S. § 1547. Section 1547 of the Vehicle Code authorizes DOT to suspend the driving privileges of a licensee for one year where the licensee is placed under arrest for

driving under the influence of alcohol, and the licensee refuses a police officer's request to submit to chemical testing.

In this syndrome people tend to over breathe and blow off too much carbon dioxide. Carbon dioxide is one of the important—is the most important trigger for respiration including expiration ... if one over breath[e]s at any particular [moment] their force of expiration may significantly deminimous [sic]. They may not be able to blow out as much air as they ordinarily could.

(R.R. at 47a.) When asked on cross-examination whether Licensee's alcohol consumption might have played a part in her inability to provide sufficient breath samples, Dr. Channick answered, "I was not there at the time. I have no idea whether or not alcohol consumption did or did not interfere with her ability to take the test.... I have no idea of her condition as far as alcohol consumption is concerned." (R.R. at 50a.) However, Dr. Channick further testified:

[Licensee] has been my patient since she was 12 years of age. I have seen her many times over the years. I was very familiar with hyperventilation syndrome which could be brought on during a particular periods [sic] of anxiety, stress or tension.

This is—she did explain to me the emotional trauma that accompanied her arrest. That her mother was in the car with her, that her mother was left sitting in the car when she was brought to the police station. So, it was tremendous emotional stress on her at the time. I am sure that this would make her hyperventilate because I [have] seen it happen to her on any number of occasions under stress.

(R.R. at 51a–52a.)

After considering the evidence presented, the trial court accepted Dr. Channick's testimony as credible. The trial court then concluded, based on this court's decision in *Lemon v. Department of Transportation, Bureau of Driver Licensing*, 763 A.2d 534 (Pa.Cmwlth.2000), that Licensee's failure to inform the nurse or Officer Kennedy of her hyperventilation syndrome was immaterial. Therefore, the trial court granted Licensee's appeal and rescinded the suspension imposed by DOT. DOT now appeals to this court.[2]

DOT argues that the trial court erred in concluding that, under *Lemon*, Licensee's failure to inform Officer Kennedy of her hyperventilation syndrome was immaterial. We agree.[3]

Where a licensee suffers from a medical condition that affects the licensee's ability to perform a chemical test and that condition is not obvious, the licensee is required to inform the officer of the condition so an alternative chemical test that the licensee could perform can be administered. *Wright v. Commonwealth*, 788

---

2. Our scope of review in a license suspension case is limited to determining whether necessary findings are supported by competent evidence of record and whether the trial court committed an error of law or abused its discretion in making its decision. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 555 Pa. 193, 723 A.2d 655 (1999). Whether a licensee has refused a chemical test is a question of law subject to plenary review. *Id.*

3. To sustain a license suspension under section 1547 of the Vehicle Code, DOT must establish that: (1) the licensee was arrested for drunken driving by a police office with reasonable grounds to believe that the motorist was operating a motor vehicle while under the influence of alcohol; (2) the licensee was requested to submit to a chemical test; (3) the licensee refused to submit; and (4) the licensee was warned that refusal would result in a license suspension. *Lemon*. Once DOT meets this burden, the licensee must then establish that the refusal was not knowing or conscious or that the licensee physically was unable to take the test. *Id.*

**1028**

A.2d 443 (Pa.Cmwlth.2001), *appeal denied,* 568 Pa. 712, 796 A.2d 989 (2002) (citing *Hatalski v. Department of Transportation, Bureau of Driver Licensing,* 666 A.2d 386 (Pa.Cmwlth.1995)). *Lemon* did not alter this rule.

In *Lemon,* when the licensee failed to provide sufficient breath samples for the breathalyzer machine, he asked the officer to transport him to a local hospital for a blood test. The licensee knew that he had emphysema, but he had not yet been diagnosed with the condition. The licensee did not inform the officer that emphysema had prevented him from providing the breath samples; therefore, the officer refused the request for a blood test. In presenting his case to the court of common pleas, the licensee offered into evidence a hospital report showing the results of pulmonary function tests. However, the licensee did not present any expert medical testimony to interpret the test results. This court denied the licensee's appeal, holding that the licensee failed to present competent medical evidence about his pulmonary problems. Having decided the appeal on that basis, this court stated that the licensee's failure to inform the officer of his breathing problems prior to taking the test was immaterial.[4] *Id.*

In other words, this court in *Lemon* chose to decide the appeal based on the lack of competent medical evidence rather than the failure to inform the officer of the medical condition. This court did *not* eliminate the need for a licensee to inform the officer administering a breathalyzer

test of a medical condition that could adversely affect the licensee's ability to perform the test. Thus, here, the trial court erred in concluding that, pursuant to *Lemon,* the licensee's failure to inform Officer Kennedy of her hyperventilation syndrome was immaterial.[5]

Accordingly, we reverse.

*ORDER*

AND NOW, this 19th day of February, 2004, the order of the Court of Common Pleas of Philadelphia County, dated April 17, 2003, is hereby reversed.

---

4. This court stated, "It is immaterial whether Lemon failed to inform Officer Douglass of his breathing problems prior to taking the test, for it is his failure to produce competent medical evidence of his underlying pulmonary problems *that results in our decision today."* *Lemon,* 763 A.2d at 539.

5. We note there is no evidence suggesting that Licensee was unaware that she suffered from hyperventilation syndrome or that it might have adversely affected her ability to provide sufficient breath samples. The only person who could have testified about Licensee's awareness of her condition was Licensee herself. However, as stated above, Licensee did not testify on her own behalf.