IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lucas Conrad, : 
              Appellant : 
               : 
     v. : No. 603 C.D. 2019
               : SUBMITTED: November 22, 2019
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                FILED: February 7, 2020

Lucas Conrad (Licensee) appeals from the April 15, 2019 Order of the Court of Common Pleas of Chester County (Trial Court), which denied his statutory appeal from the one-year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT). DOT imposed the one-year suspension pursuant to Section 1547(b)(1)(i) of the Vehicle Code, commonly known as the Implied Consent Law, due to Licensee's refusal to submit to chemical testing following his arrest for driving under the influence of alcohol or a controlled substance (DUI).[1] We affirm the Trial Court's Order.

---

[1] Section 1547(b)(1)(i) of the Implied Consent Law provides:

(b) Civil penalties for refusal.—

    (1) If any person placed under arrest for a violation of [S]ection 3802 [of the Vehicle Code (relating to DUI)] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon

**Background**

In the early morning hours of November 18, 2017, Officer Ryan Kushner of the Southern Chester County Regional Police Department was on patrol in New Garden Township, Pennsylvania, when he observed a black Ford Ranger being driven erratically. Notes of Testimony (N.T.), 2/21/19, at 4-5. Officer Kushner activated his patrol vehicle's overhead lights and effectuated a traffic stop of the Ford Ranger, which was being operated by Licensee. *Id.* at 5. Officer Kushner "detected a strong odor of alcoholic beverage emanating from inside the vehicle" and observed that Licensee's "eyes were glassy and bloodshot." *Id.* at 6. When asked whether he had been drinking that night, Licensee stated that "he had two Coors Lights." *Id.*

Officer Kushner asked Licensee to exit his vehicle to perform field sobriety testing. *Id.* The officer administered the horizontal-gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test to Licensee. *Id.* Licensee displayed signs of impairment on two of the tests. *Id.* Officer Kushner then asked Licensee to submit to a portable breath test, but he refused. *Id.* at 8.

Officer Kushner took Licensee "into custody for suspicion of DUI" and transported him to a police substation in West Grove Borough for a breath test. *Id.*

---

notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. § 1547(b)(1)(i).

Licensee consented to the breath test after Officer Kushner read to Licensee the implied consent warnings contained in DOT's DL-26A Form.[2] *Id.* at 8-9.

At the police substation, Patrolman First Class (PFC) Joseph Cooper, a certified breath test operator, administered the breath test to Licensee. *Id.* at 8, 13. PFC Cooper utilized a DataMaster DMT breathalyzer device, which had been properly calibrated at that time. *Id.* at 14. After the requisite 20-minute observation period, PFC Cooper gave Licensee three opportunities to supply a valid breath sample, but Licensee did not provide enough breath to register a proper sample. *Id.* at 9-10, 16-17. Because Licensee did not provide two consecutive, sufficient breath

[2] The DL-26A Form that Officer Kushner read to Licensee stated:

**It is my duty as a police officer to inform you of the following:**

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of breath.

3. If you refuse to submit to the breath test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the breath test, and you are convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. **These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail** and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.00.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a breath test, you will have refused the test.

N.T., 2/21/19, Ex. C-1 (bold in original).

3

samples, the officers deemed his failure to complete the breath test a refusal. *Id.* at 20.

On December 11, 2017, DOT mailed a notice to Licensee stating that his operating privilege would be suspended for one year, effective January 15, 2018, for his refusal to submit to chemical testing on November 18, 2017. Licensee timely appealed to the Trial Court, which held an evidentiary hearing on February 21, 2019.

At the hearing, DOT presented the testimony of Officer Kushner and PFC Cooper. Officer Kushner testified that he was present in the room when PFC Cooper administered the breath test to Licensee. According to Officer Kushner, Licensee "was given three separate opportunities to take the test, all of which were deemed incomplete because he didn't provide enough breath to register a proper sample after three attempts." N.T., 2/21/19, at 9-10. Officer Kushner further testified that "[a]t that time[,] [Licensee] told us both that he has asthma and that was the reason why he could not perform the test properly." *Id.* at 10.

PFC Cooper testified that before administering the breath test to Licensee, he "explained the test to [Licensee], that he had to blow properly twice into the instrument to perform the test." *Id.* at 17. He also instructed Licensee "to give a nice steady breath until . . . I tell him to stop breathing, blowing." *Id.* Although Licensee blew into the device, he "failed to give a proper breath sample." *Id.*

PFC Cooper further testified that "during the test[,] [Licensee] did say that he had asthma, but he wasn't exhibiting any things that would relate to asthma." *Id.* at 19. PFC Cooper testified, "I didn't view any labored breathing with him. He wasn't having any labored breathing . . . . He wasn't having any type of asthma attack." *Id.* PFC Cooper testified that Licensee did not provide two consecutive, sufficient breaths in order to complete the breath test. *Id.* at 20.

Licensee testified that he consented to the breath test after Officer Kushner read the warnings on the DL-26A Form. *Id.* at 27-28. Thereafter, "after the observation period[,] I took the [b]reathalyzer exam, and I had never done one before[,] although [PFC] Cooper kind of said that he explained it to me." *Id.* at 29. Licensee testified that during the test, he was "under stress" and informed PFC Cooper that he "had an asthma condition." *Id.* at 30. Licensee believed that he was experiencing an asthma attack because "it felt like someone was stepping on my chest." *Id.* at 31. Licensee testified that he was aware that he "had to give two deep lung breaths in rapid succession" to complete the breath test; however, the officers did not tell him that if he failed to do so, it would be registered as a refusal. *Id.* Licensee acknowledged, however, that he was "not able to provide those breaths no matter if they told me or not." *Id.* at 32. On cross-examination, Licensee testified that he did not inform the officers that he was having an asthma attack because he did not believe he had to. *Id.* at 33-34.

Licensee also presented the testimony of Andrew Brown, M.D., who is board-certified in internal medicine and pulmonary disease. *Id.* at 37. Dr. Brown testified that he examined Licensee for the first time on November 9, 2018, almost one year after Licensee's DUI arrest. *Id.* at 37, 42. According to Dr. Brown, Licensee informed him that "he had a history of asthma since 2007." *Id.* at 38. Dr. Brown testified that he "performed a thorough examination and . . . pulmonary function studies" on Licensee. *Id.* at 37. According to Dr. Brown, "during that office visit[,] [Licensee] had a normal exam and he also had normal breathing studies," but the tests revealed that Licensee had "hyper[-]responsive airways, which is the hallmark of asthma." *Id.* at 37-38.

Dr. Brown testified, to a reasonable degree of medical certainty, that Licensee's testimony regarding what transpired during the breath test on November 18, 2017 was "consistent with an asthmatic condition." *Id.* at 38. Dr. Brown explained that asthma "patients can just present with a feeling of chest heaviness. They don't have to be wheezing. They don't have to be coughing or have any other manifestations of asthma to be in an asthmatic attack." *Id.* at 40.

On cross-examination, Dr. Brown testified that he based his opinion testimony on the history that Licensee verbally related to him. *Id.* at 42-43. Dr. Brown did not review any prior medical records because Licensee "didn't provide any medical records" to him. *Id.* at 43. Dr. Brown testified that at the time he examined Licensee, "I believe he told me that he was arrested for a DUI and that he had asthma. I don't recall if he told me he was having an asthma attack during the [breath test]." *Id.* at 44.

Dr. Brown testified that he had not heard of the DataMaster DMT device before the hearing. *Id.* Dr. Brown also testified that he was not familiar with the exact force of expiratory volume required to satisfy a breathalyzer test, the length of breath needed to satisfy the test, how hard a person needs to blow into the device to complete the test, or the lung capacity needed to perform the test. *Id.* at 44-45. When asked if he was certain that Licensee had an asthma attack on November 18, 2017, Dr. Brown replied, "I wasn't there, so I don't know." Dr. Brown further testified:

> I'm not forming an opinion as to whether or not [Licensee] was having an asthma attack. My medical opinion is that he has a history of asthma. Asthma is diagnosed clinically. And the [pulmonary] test [I performed] supports the fact that he has hyper[-]responsive airways which is consistent with asthma. *I'm not forming an opinion as to what transpired when [Licensee] was arrested and was asked to blow into the [b]reathalyzer.*

6

*Id.* at 46 (emphasis added).

Following the hearing, the Trial Court denied Licensee's statutory appeal and reinstated the one-year suspension of his operating privilege. In its subsequent Pa. R.A.P. 1925(a) Opinion, the Trial Court made the following factual findings:

> [Licensee] did not tell the police officers that he was suffering from an asthma attack. He did tell them that he suffered from an asthma condition[,] which he differentiated from an asthma attack. The testimony, which we credit, was that [Licensee] was not exhibiting any signs of an asthma attack. [Licensee] testified that he has an inhaler, but there is no evidence that at any time he asked to use the inhaler.
>
> . . . .
>
> [Dr. Brown] did not opine that [Licensee] was suffering an asthma attack at the time he was attempting to perform the breath tests. Although the doctor testified that he could not determine whether or not [Licensee] was having an asthma attack at the time of the incident because [Dr. Brown] was not present, he also testified that he heard [Licensee's] testimony and could only testify that [Licensee's] testimony was consistent with an asthmatic condition. . . . The doctor was not asked and did not opine that the inability of [Licensee] to give adequate breath samples was *caused* by an asthma attack. Consistent with and caused by are two entirely different things.

Trial Ct. Op., 7/30/19, at 4-5 (internal citations omitted) (emphasis in original). Therefore, the Trial Court concluded that "the evidence fail[ed] to persuade us that [Licensee] was suffering an asthmatic attack at the time he was attempting to provide breath samples" and Licensee's medical evidence "fail[ed] to demonstrate that his failure to provide adequate breath samples was caused by a medical condition." *Id.* at 3-4. Licensee now appeals to this Court.[3]

---

[3] In an appeal arising from a suspension of a licensee's operating privilege, our scope of review is limited to determining whether the Trial Court's decision is supported by substantial

## Issues

(1)    Was Licensee's refusal to submit to chemical testing knowing and conscious, where Licensee was never informed that his failure to produce two sufficient breath samples would be deemed a refusal?

(2)    Did Licensee establish that he was physically incapable of completing a breath test due to a medical condition?

(3)    Were Licensee's due process rights violated by the requirement that he present competent medical evidence to establish his physical inability to complete a breath test?

(4)    Was the Trial Court required to make findings of fact at the conclusion of the *de novo* hearing or when it issued its Order denying Licensee's statutory appeal?

## Analysis

To support the suspension of a licensee's operating privilege under the Implied Consent Law, DOT must prove that the licensee: (1) was arrested for DUI by an officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol in violation of Section 3802 of the Vehicle Code; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that his refusal might result in a license suspension and would result in enhanced penalties if he were later convicted of DUI. *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). Once DOT satisfies its burden of proof, the burden shifts to the licensee to prove that

---

evidence, whether the Trial Court committed an error of law, or whether the Trial Court manifestly abused its discretion. *Pappas v. Dep't of Transp., Bureau of Driver Licensing*, 669 A.2d 504, 507 n.4 (Pa. Cmwlth. 1996).

8

either: (1) his refusal was not knowing and conscious; or (2) he was physically incapable of completing the chemical test. *Id.*; *see Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010).[4]

### 1. Knowing and Conscious Refusal

First, Licensee asserts that his refusal to submit to chemical testing was not knowing and conscious because the officers never informed him, by reading the DL-26A Form warnings or otherwise, that his failure to provide two sufficient breath samples would be deemed a refusal. Licensee claims that he voluntarily consented to the breath test and gave his best effort to complete the test, so his "deemed" refusal for failure to supply adequate breath samples was neither knowing nor conscious. Licensee's position, however, is contrary to both the requirements of the Implied Consent Law and our Court's precedent.[5]

Our Court has held that a licensee's failure to provide two consecutive, sufficient breath samples, absent a proven medical reason that precludes him from doing so, constitutes a refusal as a matter of law. *Quick v. Dep't of Transp., Bureau of Driver Licensing*, 915 A.2d 1268, 1271 (Pa. Cmwlth. 2007); *see* 67 Pa. Code § 77.24(b)(1) (stating that "[t]he procedures for alcohol breath testing shall include, *at a minimum . . . [t]wo consecutive actual breath tests*, without a required waiting

---

[4] "Whether the conduct at issue constitutes a refusal is a question of law reviewable by this Court." *Lemon v. Dep't of Transp., Bureau of Driver Licensing*, 763 A.2d 534, 538 (Pa. Cmwlth. 2000).

[5] In his Pa. R.A.P. 1925(b) Concise Statement of Errors Complained of an Appeal (Rule 1925(b) Statement), Licensee also argued that the officers never informed him that he had to provide two consecutive, valid breath samples to successfully complete the breath test. *See* Original Record Item No. 13, at 1. However, Licensee has abandoned that argument in his appellate briefs filed with this Court. *See* Licensee's Reply Br. at 1. In any event, the Trial Court found, based on the credible testimony of PFC Cooper, "that it was made clear to [Licensee] that he had to give two (2) consecutive[,] adequate breath samples in order to be considered to have submitted to testing." Trial Ct. Op., 7/30/19, at 2.

period between the two tests") (emphasis added). Moreover, the "failure to complete a breathalyzer test, *whether or not a good faith effort was made to do so, constitutes a refusal per se to take the test*." *Sweeney v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 685, 687 (Pa. Cmwlth. 2002) (*en banc*) (emphasis in original); *see Dep't of Transp., Bureau of Driver Licensing v. Kilrain*, 593 A.2d 932, 935 (Pa. Cmwlth. 1991) (*en banc*) ("Anything less than a completed breathalyzer test which registers a blood alcohol reading on the breathalyzer constitutes a refusal.").

Contrary to Licensee's contention that the officers were required to explain what conduct constitutes a "refusal," our case law holds that the only warnings an officer is required to give a licensee are those required by the Implied Consent Law and the Pennsylvania Supreme Court's decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).[6] *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 736 (Pa. Cmwlth. 2017). The Implied Consent Law does not require that the warnings "contain any specific wording." *Yourick v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 341, 345 (Pa. Cmwlth. 2009) (*en banc*). Rather, the warnings "must merely 'inform' a licensee that his[] 'operating privilege will be suspended upon refusal to submit to chemical testing.'" *Id.* (quoting 75 Pa. C.S. § 1547(b)(2)(i)).

---

[6] In *O'Connell*, the Supreme Court held:

> [W]here an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

555 A.2d at 878.

Recently, we rejected similar claims challenging the adequacy of implied consent warnings regarding chemical test refusal in two unreported decisions, *Flaherty v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 635 C.D. 2017, filed May 11, 2018), and *Albright v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 124 C.D. 2019, filed November 7, 2019).[7] In each case, the trial court determined that the warnings in DOT's DL-26A Form were deficient because they did not advise licensees that they had to provide two valid breath samples to satisfactorily complete a breath test, nor did they advise licensees that the failure to complete two breath tests would constitute a refusal. On appeal, the *Flaherty* Court explained:

> [T]he applicable statutes and regulations reveal no requirement that an officer warn a licensee, before testing begins, that two breath tests are required by [DOT's] regulations. Section 1547(b)(2) requires only that an officer warn that operating privileges "will be suspended upon refusal to submit to chemical testing."

*Flaherty*, slip op. at 12-13 (citation omitted) (emphasis removed). In *Flaherty*, we rejected the licensee's argument that she was not sufficiently warned that two breath tests were required to avoid a refusal and the suspension of her operating privilege:

> [The officer] testified that he told [the l]icensee that she had to submit to two breath tests. . . . *[The l]icensee argued at the hearing that she did not refuse the breath test and, to the contrary, stated that she submitted to the breath test twice,* which supports [the officer's] testimony that he told her that she had to submit to two breath tests. . . . *However, [the l]icensee failed to provide a sufficient breath sample during the second test, as proven by the printouts from the breathalyzer*

---

[7] *See* Cmwlth. Ct. Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a) (stating that an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value only).

11

> *DOT entered into evidence, which, under the law, constituted a per se refusal.*

*Id.*, slip op. at 13-14 (internal citations omitted) (emphasis added); *accord Albright*, slip op. at 11-12. Therefore, in both *Flaherty* and *Albright*, we reversed the trial court's orders and reinstated the suspension of the licensees' operating privileges based on their deemed refusals to submit to chemical testing.

In this case, the record establishes that Officer Kushner read the DL-26A Form verbatim to Licensee, and PFC Cooper verbally explained to Licensee that a successful breath test required two valid breath samples. N.T., 2/21/19, at 8-9, 17; Trial Ct. Op., 7/30/19, at 2. Despite his efforts to do so, Licensee failed to supply a valid breath sample after three attempts. Our Court has specifically rejected the position that "all that is required to submit to the [chemical] test is to manifest an intention to take the test and to make an attempt to take the test." *Kilrain*, 593 A.2d at 934. Rather, "this [C]ourt has long required more than mere verbal assent to take the test and has required that the licensee *actually take and complete the test*." *Id.* (emphasis added).

Accordingly, based on the credible evidence of record, we conclude that Licensee's failure to successfully complete the breath test constituted a *per se* refusal under our case law.

### 2. Physical Inability to Complete Breath Test

Second, Licensee argues that he presented sufficient, competent evidence to prove that he was physically incapable of completing the breath test due to a medical condition. We disagree.

It is well settled that a licensee has a duty to inform the police officer of any known medical condition that is not obvious and may affect the licensee's ability to perform the requested chemical test. *Whistler v. Dep't of Transp., Bureau of Driver*

12

*Licensing*, 882 A.2d 537, 540 (Pa. Cmwlth. 2005); *Bridges v. Dep't of Transp., Bureau of Driver Licensing*, 752 A.2d 456, 459-60 (Pa. Cmwlth. 2000). Although it is undisputed that Licensee informed the officers that he had an asthma condition at the time of the test, we conclude that Licensee failed to satisfy his burden of proving that he was physically incapable of completing the breath test due to that condition.

"[W]here a licensee suffers from a medical condition that affects his ability to perform the test and that condition is not obvious, [a] finding that [the licensee] was unable to take the test for medical reasons *must be supported by competent medical evidence*." *Lemon*, 763 A.2d at 538 (emphasis added). Medical evidence must be unequivocal to support a licensee's contention that he was incapable of making a knowing and conscious refusal to submit to chemical testing. *Dep't of Transp., Bureau of Driver Licensing v. Wilhelm*, 626 A.2d 660, 663 (Pa. Cmwlth. 1993). "Equivocal statements that a [licensee's] condition 'could' have or 'may' have prevented him from performing the breathalyzer test properly are insufficient to meet th[e] requirement [of competent medical evidence]." *Id*. For medical evidence to be deemed competent, "[the licensee's] expert witness need only tender an opinion with a reasonable degree of medical certainty." *Barbour v. Dep't of Transp., Bureau of Driver Licensing*, 732 A.2d 1157, 1160 (Pa. 1999). Moreover, if the licensee's "inability to make a knowing [or] conscious refusal of testing is caused in whole or in part by [the] consumption of alcohol, the licensee is precluded from meeting [his] burden as a matter of law." *Kollar*, 7 A.3d at 340.

We conclude that Dr. Brown's testimony was too equivocal to prove that Licensee was physically unable to complete the breath test due to an asthma attack. Dr. Brown testified that "if [a person is] in the midst of an asthma attack[,] it will

13

interfere with [him] giving a full expiration [of breath]." N.T., 2/21/19, at 39. However, Dr. Brown did not opine, to a reasonable degree of medical certainty, that Licensee suffered an asthma attack on November 18, 2017 that prevented him from completing a breath test, because "I wasn't there, so I don't know." *Id.* at 46. Dr. Brown could only opine that his clinical findings during his examination of Licensee, one year after the breath test, were "consistent with an asthmatic condition." *Id.* at 40, 50. As the Trial Court correctly determined:

> [Dr. Brown] could only testify that [Licensee's] testimony was consistent with an asthmatic condition. . . . The doctor was not asked and did not opine that the inability of [Licensee] to give adequate breath samples was *caused* by an asthma attack. Consistent with and caused by are two entirely different things.

Trial Ct. Op., 7/30/19, at 4-5 (emphasis in original); *see Scott v. Dep't of Transp., Bureau of Driver Licensing*, 6 A.3d 1047, 1052 (Pa. Cmwlth. 2010) ("[W]e agree with DOT that [the doctor's] testimony was equivocal on the question of whether [the l]icensee, in fact, suffered a panic attack the evening of her arrest, which prevented her from making a knowing and conscious refusal to submit to chemical testing.").

Our Court has also held that where a medical expert is unaware of what is required to satisfy the requirements of a breathalyzer test, the expert's testimony that the licensee was physically unable to perform the breath test is not competent. *Whistler*, 882 A.2d at 541. In *Bridges*, we rejected a medical expert's testimony in a license suspension appeal because he was unable to opine whether the licensee's failure to complete the breath test was caused by a pulmonary condition, as follows:

> A review of [the doctor's] testimony reveals that he did not provide substantial evidence necessary to support a finding that [the l]icensee could not produce the breath necessary to successfully complete the test

14

due to a medical condition. [The doctor] testified that he was not aware of the exact forced expiratory volume required to satisfy the requirements of the breathalyzer test, that he was not aware of the period of time that a breath is needed to be sustained for the test or how hard a person needs to blow in order to satisfy the requirements of the test. Since *Wilhelm* holds that [the doctor's] lack of knowledge makes his testimony equivocal or incompetent because he did not know what lung capacity was required in order to perform the test, such evidence, being incompetent, cannot sustain the trial court's conclusion. *Although [the doctor] opined that [the l]icensee would have had significant difficulty completing the breathalyzer test due to his pulmonary disease, the doctor was without knowledge of the specific amount of breathing capacity required by the particular machine used to perform the test properly. Mere difficulty in breathing does not mean that [the l]icensee did not have the lung capacity to perform the test even with the acknowledgement of his medical condition.*

752 A.2d at 460 (footnote omitted) (emphasis added).

Here, Dr. Brown admitted that he had not heard of the DataMaster DMT device before the hearing. N.T., 2/21/19, at 44. Dr. Brown also testified that he was not familiar with the force of expiratory volume required to satisfy a breathalyzer test, the length of breath needed to satisfy the test, how hard a person would need to blow into the device to complete the test, or the lung capacity needed to perform the test. *Id.* at 44-45. Significantly, Dr. Brown testified, "I'm not forming an opinion as to whether or not [Licensee] was having an asthma attack [at the time of the test]. My medical opinion is that he has a history of asthma. . . . *I'm not forming an opinion as to what transpired when he was arrested and was asked to blow into the [b]reathalyzer.*" *Id.* at 46 (emphasis added). This testimony was not competent to prove that Licensee's failure to compete the breath test on the night of his arrest was caused by an asthma attack. *See Whistler*, 882 A.2d at 541; *Bridges*, 752 A.2d at 460.

15

Moreover, Officer Kushner credibly testified that when he arrested Licensee, he "detected a strong odor of alcoholic beverage emanating from inside the vehicle" and observed that Licensee's "eyes were glassy and bloodshot." N.T., 2/21/19, at 6. Licensee also informed Officer Kushner that he had been drinking alcohol that night. *Id.* However, Dr. Brown failed to offer any opinion as to whether Licensee's failure to complete the breath test was caused by his alcohol consumption on the night in question, rather than by a medical condition. *See Kollar*, 7 A.3d at 340.

Based on the evidence of record, we conclude that Dr. Brown's testimony was equivocal as to whether Licensee actually suffered an asthma attack at the time of the breath test that prevented him from providing an adequate breath sample. Dr. Brown also did not rule out Licensee's alcohol consumption as the cause of his inability to perform the breath test. Therefore, we conclude that Licensee failed to prove, by competent medical evidence, that he was physically unable to provide a valid breath sample at the time of the test.

### 3. Due Process Violation

Next, Licensee asserts that the requirement that he provide competent medical evidence of his physical inability to complete a breath test violated his due process rights. According to Licensee, such a requirement is "fundamentally unfair" because "the finder of fact is essentially instructed to disbelieve a [licensee] who testifies under oath that he gave it his best effort [to supply a breath sample], unless he hires a medical doctor to testify and the medical doctor testifies to exactly the right things." Licensee's Br. at 23. We conclude that this claim lacks merit.

Licensee acknowledges that the Trial Court was bound by this Court's precedent setting forth a licensee's burden of proof in a chemical test refusal case, but he claims that the application of such precedent unfairly favors DOT and

16

prejudices licensees. In support of this assertion, Licensee relies solely on a dissenting opinion in *Kilrain*, 593 A.2d at 936-39 (Pellegrini, J., dissenting). However, a dissenting opinion is not binding precedent.

There is nothing unfair about requiring a licensee who claims that he was physically incapable of completing a breath test due to medical condition to offer competent medical evidence to support that assertion. Licensee was afforded a hearing *de novo* conducted by an independent factfinder, who permitted Licensee to offer the testimony of his medical expert, Dr. Brown. However, Dr. Brown's testimony was equivocal as to whether Licensee actually suffered an asthma attack at the time of the chemical test that prevented him from providing an adequate breath sample. In other words, Licensee's failure to satisfy his burden of proof was not due to a denial of due process, but to his own failure to offer competent medical evidence.

As discussed in Sections 1 and 2 of this Analysis, *supra*, we conclude that the Trial Court correctly applied this Court's precedent in determining that Licensee failed to satisfy his burden of proof. Therefore, we reject Licensee's due process claim.

### 4. Trial Court's Findings of Fact

Finally, Licensee contends that the Trial Court erred in failing to make findings of fact either at the conclusion of the *de novo* hearing or when it issued its Order denying Licensee's appeal. According to Licensee, "in order for a potential appellant to make an intelligent decision about whether to appeal the [trial] court's decision, or what issues to raise on appeal, it is necessary for the [trial] court to make findings of fact, and make those [f]indings[,] at the latest, when deciding the case." Licensee's Br. at 16. We disagree.

17

After conducting a *de novo* hearing, if the trial court decides that the license suspension was properly imposed, the trial court must enter an order denying or dismissing the appeal. Nothing more is required of the trial court unless the licensee files an appeal with this Court in accordance with Section 762(a)(3) of the Judicial Code, 42 Pa. C.S. § 762(a)(3).

Once an appeal is filed, Pennsylvania Rule of Appellate Procedure 1925(a)(1) requires that "if the reasons for the order do not already appear of record, [the trial court] shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found." Pa. R.A.P. 1925(a)(1).

In this case, the Trial Court complied with Rule 1925(a)(1) and responded to the issues raised in Licensee's Rule 1925(b) Statement by making necessary findings of fact relevant to the issues raised. Licensee has cited no legal authority, nor have we found any, to support his assertion that in a statutory appeal of a license suspension, a trial court is required to issue findings of fact at the conclusion of the *de novo* hearing or at the time it enters an order denying the appeal. *Cf. Lemon*, 763 A.2d at 537 (rejecting the licensee's claim that the trial court erred in denying the appeal without a supporting opinion and declining to remand, because the record was sufficient for appellate review, the issues raised were questions of law, and this Court may affirm the trial court on any basis).

We conclude that the Trial Court did not err in making the necessary findings of fact in its Rule 1925(a) Opinion, rather than in its Order denying Licensee's statutory appeal.

## **Conclusion**

Accordingly, we affirm the Trial Court's Order.


_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lucas Conrad,              :
             Appellant      :
                              :
       v.                   :   No. 603 C.D. 2019
                              :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing       :

## **O R D E R**

AND NOW, this 7th day of February, 2020, the Order of the Court of Common Pleas of Chester County, entered April 15, 2019, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge