**George R. MARTIN Jr., Appellant**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 1, 2011.

Decided May 19, 2011.

---

---

Robert C. Wee, Lancaster, for appellant.

Terrance M. Edwards, Assistant Counsel, for appellee.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

George R. Martin, Jr. (Licensee), appeals from the August 23, 2010, order of the Court of Common Pleas of Lancaster County (trial court), which dismissed Licensee's appeal challenging the suspension of his operating privileges by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT), pursuant to section 1547(b)(1)(ii) of the Vehicle Code.[1] We reverse.

On August 21, 2009, Trooper Steven Ledwich performed a traffic stop after observing Licensee drive through a stop sign. When Trooper Ledwich smelled alcohol and noticed that Licensee had bloodshot eyes, he asked that Licensee undergo field sobriety testing. When Trooper Ledwich administered the portable breath test, Licensee failed to provide a sufficient breath sample for a reading.

Trooper Ledwich placed Licensee under arrest for driving under the influence of alcohol and took him to the state police barracks for chemical testing. After receiving the required warnings, Licensee was asked to submit to a breath test, but Licensee indicated that he suffered from asthma. Trooper Timothy Connolly told Licensee that asthma should have no effect on his performance of the breath test. (N.T., 7/27/10, at 17, R.R. at 14.) Licensee made four or five attempts to complete the test, but he failed to provide sufficient breath samples. The trooper recorded a refusal to submit to chemical testing, and, as a result, DOT suspended Licensee's op-

erating privileges. Licensee filed an appeal with the trial court, which held a hearing on the matter.

At the hearing, DOT presented the testimony of Troopers Ledwich and Connolly. Trooper Ledwich testified that he had no experience with a licensee who claimed to have breathing problems. (Id. at 17, 21, R.R. at 14–15.) Thus, Trooper Ledwich did not question Trooper Connolly when Trooper Connolly told Licensee that his asthma should not prevent him from providing sufficient breath samples. (Id. at 10, R.R. at 12.) Trooper Connolly testified that Licensee made four or five failed attempts, but he believed that Licensee could have provided sufficient breath samples. (Id. at 28–29, R.R. at 17.) The trooper stated that, in other cases where people could not provide sufficient breath samples, most were able to do so "after some talking to them and encouraging them and explaining it again and again." (Id. at 27–28, R.R. at 17.) Thus, Trooper Connolly agreed that, "when someone can't provide a breath sample ... they just need a talking to." (Id. at 29, R.R. at 17.)

Licensee testified at the hearing and offered the deposition testimony of Kenneth Hurst, M.D. Dr. Hurst testified that he has treated Licensee for asthma since 2001 and for chronic obstructive pulmonary disease (COPD) since 2005. (Hurst Dep., 4/21/10, at 5, R.R. at 53.) Dr. Hurst stated that: (1) asthma and COPD are different diseases, (Id. at 10–11, R.R. at 58–59); (2) Licensee was aware of his COPD prior to the August 21, 2009, arrest, (Id. at 20, R.R. at 68); (3) Licensee was not aware of the seriousness of his COPD until September 9, 2009, after the arrest, when Dr. Hurst performed a pulmonary

---

1. 75 Pa.C.S. § 1547(b)(1)(ii). Section 1547(b)(1)(ii) of the Vehicle Code authorizes DOT to suspend the operating privileges of a person who refuses to submit to chemical testing.

function test, which was "the first confirmatory test that was ordered on him," (*Id.* at 12, R.R. at 60); (4) before the test, "nobody really knew how bad it was," (*Id.* at 20, R.R. at 68); (5) before the test, Licensee's physicians discussed his medical condition with him as "both asthma ... and COPD," (*Id.*); and (6) because of his COPD, Licensee could not have completed the breath test without medication, (*Id.* at 7–9, R.R. at 55–57).

■ After considering the evidence, the trial court concluded that, although Licensee informed the troopers that he had asthma, Dr. Hurst's testimony established that Licensee's COPD, not his asthma, prevented him from completing the breath test. Thus, the trial court dismissed Licensee's appeal. Licensee now appeals to this court.[2]

■ Licensee argues that, once he informed the troopers that he suffered from asthma, a medical condition that could affect his ability to provide sufficient breath samples, the officer was required to administer an alternative test. As for his COPD, Licensee asserts that, because the first confirmatory test for COPD occurred after the arrest, he was not required to inform the troopers of that medical condition. We agree.

■ In *Hatalski v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 386, 390 (Pa.Cmwlth.1995) (emphasis added), this court stated:

> [W]here a licensee suffers from a medical condition whose existence, 1) affects the licensee's ability to perform the test and 2) is not obvious, the licensee is required to inform the officer of the condition **so an alternative chemical test that the licensee could perform can be administered.**

Thus, the reason for requiring a licensee to inform an officer of a medical condition that could affect the licensee's ability to complete one kind of test is to obtain results through a different chemical test. A **licensee does not avoid testing** by advising the officer of a medical condition, **but an officer** who does not administer an alternative test upon being informed of a medical condition **defeats the purpose of the law** if the licensee later presents medical evidence proving that he or she could not complete the test offered because of a medical condition. In the legal scheme, then, it is not the role of an officer to "play doctor" or assess the licensee's credibility. Rather, as we stated in *Hatalski*, the officer should provide an alternative chemical test.

In *Department of Transportation v. Morris*, 153 Pa.Cmwlth. 518, 621 A.2d 1170 (1993), a licensee informed an officer that he suffered from an asthmatic condition that he believed would make it impossible for him to supply sufficient breath samples. The licensee would not even attempt the breath test, but, instead of providing an alternative chemical test, the officer recorded a refusal. The licensee later presented medical testimony establishing that he was unable to provide sufficient breath samples due to bronchial asthma. Even so, the trial court denied the licensee's appeal because the licensee did not attempt the breath test. On further appeal, we reversed, stating that "the court erred in requiring [the licensee] to make an attempt at the test when it found that he was incapable of completing the test." *Id.* at 1172. In other words, having found

---

**2.** Our scope of review is limited to determining whether the findings are supported by competent evidence, whether there has been an error of law or whether there was an abuse of discretion. *Department of Transportation v. Morris,* 153 Pa.Cmwlth. 518, 621 A.2d 1170, 1171 (1993).

that the licensee could not have completed the test, attempting the test would have served no purpose, i.e., it would have been futile. Thus, instead of recording a refusal, the officer should have offered the licensee an alternative chemical test.

█ Here, Licensee informed the troopers that he suffered from asthma, but Trooper Connolly inappropriately advised Licensee that his asthma would not affect his ability to complete the breath test. When Licensee failed to complete the breath test, instead of providing an alternative chemical test, Trooper Connolly recorded a refusal. However, as in *Morris*, the trial court found that Licensee was physically unable to complete the test due to a medical condition.[3] Thus, contrary to *Morris*, Trooper Connolly required that Licensee perform a futile act. Having been informed of Licensee's asthma, Trooper Connolly should have offered Licensee an alternative chemical test.

It is true that Licensee did not inform the trooper that he suffered from COPD. However, at the time, neither Licensee nor his physician was aware of the seriousness of his COPD. After Licensee's arrest, Dr. Hurst performed the "first confirmatory test" with respect to Licensee's COPD. Until then, "nobody" knew the severity of Licensee's COPD. Moreover, in speaking with Licensee, Licensee's physicians referred to his medical condition as both asthma and COPD. The trial court found that these are two distinct conditions, but the trial court did **not** find that Licensee was aware of the distinction.

█ A licensee is not required to inform officers of an unknown medical condition that would have affected his ability to complete a breath test. *Bridges v. Department of Transportation, Bureau of Driver Licensing*, 752 A.2d 456, 460 (Pa.Cmwlth. 2000). Here, because the trial court found that Licensee was not aware of the severity of his COPD and because there is no finding that Licensee knew the distinction between his asthma and his COPD, we conclude that, having informed the troopers of his asthma, Licensee was not required to inform them of his COPD.

Accordingly, we reverse.

### ORDER

AND NOW, this 19th day of May, 2011, the order of the Court of Common Pleas of Lancaster County, dated August 23, 2010, is hereby reversed.

---

**3.** *See Morris*, 621 A.2d at 1172 (stating that, once DOT meets its burden of proving that a driver failed to submit to chemical testing, the burden shifts to the licensee to prove by competent evidence that he was physically unable to take the test).