626 A.2d 660

COMMONWEALTH of Pennsylvania, DEPARTMENT of TRANSPORTATION, BUREAU of DRIVER LICENSING,

v.

**Theodore K. WILHELM, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs, Feb. 5, 1993.

Decided March 17, 1993.

Publication Ordered June 7, 1993.

Norbert J. Powell, for petitioner.

Chester J. Karas Jr., for appellee.

Before COLINS and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Theodore K. Wilhelm (Wilhelm) appeals from an order of the Court of Common Pleas of Elk County (trial court) denying his appeal and sustaining the one-year suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) for his failure to submit to chemical testing pursuant to Section 1547(b) of the Vehicle Code (Code), 75 Pa.C.S. § 1547(b).

On September 13, 1991, Wilhelm was stopped by State Trooper Dana P. Stewart (Trooper Stewart) of the Pennsylvania State Police after he observed Wilhelm driving erratically, crossing the center line on State Route 219, and nearly causing a head-on collision. Believing that Wilhelm might be under the influence of alcohol because he also had a strong odor of alcohol on his breath, his walk was staggered and he used his car to support himself in order to stand, Trooper Stewart requested Wilhelm to submit to three field sobriety tests. After Wilhelm failed two of the three tests, Trooper Stewart arrested Wilhelm and transported him to the State Police Barracks.

At the barracks, State Trooper James A. Sharer (Trooper Sharer) requested Wilhelm to submit to a breathalyzer test and explained the implied consent law. Trooper Sharer administered the test five times, but only received one adequate breath sample on the third attempt. Because Wilhelm was unable to provide two consecutive breath samples as required, Trooper Sharer determined that Wilhelm's failure to do so constituted a refusal to take the test.[1] By official notice dated October 17, 1991, DOT notified Wilhelm that his operating

---

1. Pursuant to 67 Pa.Code § 77.24(b), the procedure for alcohol breath testing shall include at a minimum:
   (1) Two consecutive actual breath tests, without a required waiting period between the two tests.
   (2) One simulator test using a simulator solution designed to give a reading of .10%, to be conducted immediately after the second actual alcohol breath test has been completed. The lower of the two actual breath test results will be the result used for prosecution.
   See also Department of Transportation, Bureau of Driver Licensing v. Kilrain, 140 Pa.Commonwealth Ct. 484, 593 A.2d 932 (1991), petition for allowance of appeal denied, 529 Pa. 625, 600 A.2d 541 (1991).

privileges were suspended for one year pursuant to Section 1547 of the Code for refusing to submit to chemical testing.[2]

Wilhelm appealed his suspension to the trial court. In a *de novo* hearing, Wilhelm claimed that prior to taking the breathalyzer test, he informed Trooper Sharer that he had a pulmonary obstruction which prevented him from exhaling sufficiently to perform the test properly. Wilhelm further claimed that he made several attempts at performing the test, but was unable to perform sufficiently due to this obstruction. Both Trooper Stewart and Trooper Sharer, however, testified that Trooper Sharer had specifically asked Wilhelm if he had any medical condition which would prevent him from performing the test properly, and Wilhelm answered that he only had high blood pressure.

The trial court found Wilhelm's testimony credible that he had informed Trooper Sharer of his pulmonary problem and granted a continuance so he could obtain medical evidence to present to the court. Wilhelm ultimately provided the trial court with the deposition testimony of James Hackett, M.D., a specialist in internal medicine. The trial court determined that his testimony was insufficient to prove that Wilhelm had a medical condition which prevented him from performing the breathalyzer test properly. The trial court noted that Dr. Hackett never examined Wilhelm or performed any tests, but only relied on the tests that Wilhelm's personal physician had performed in December of 1991. The trial court held that Dr. Hackett's testimony did not establish medically that Wilhelm was unable to perform the test both because he never unequivocally stated that Wilhelm's condition affected his ability to perform the test, and he did not know what lung capacity

2. Section 1547(b) of the Code provides in relevant part:
   (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted, but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

was required to perform the test. Wilhelm then filed this appeal.[3]

To sustain a license suspension under Section 1547(b) of the Code, DOT must establish that the driver involved (1) was arrested for driving while under the influence of alcohol, (2) was requested to submit to a chemical test, (3) refused to submit to such a test, and (4) was specifically warned that a refusal would result in the revocation of his driver's license. *Wheatley v. Department of Transportation,* 104 Pa.Commonwealth Ct. 171, 521 A.2d 507 (1987). Once DOT has proven that the driver failed to submit to the chemical test, the burden then shifts to the driver to prove by competent evidence that he was physically unable to take the test or was not capable of making a knowing and conscious refusal. *Department of Transportation, Bureau of Driver Licensing v. Norton,* 103 Pa.Commonwealth Ct. 78, 519 A.2d 1085 (1987). When no obvious inability is apparent, the driver must inform the official administering the test of any medical problem not reasonably ascertained. *Larkin v. Commonwealth,* 109 Pa.Commonwealth Ct. 611, 531 A.2d 844 (1987). A finding that the driver was unable to take the test for medical reasons must be supported by competent medical evidence. *Id.*

Wilhelm contends that his license should not be suspended because the trial court erred by not finding that Dr. Hackett's testimony supported a finding that he had a medical condition which prevented him from performing the breathalyzer test properly. Wilhelm points out that Dr. Hackett testified that Wilhelm had extreme difficulty in expiring air once he had taken a deep inhalation, he only had a 50% breathing capacity, and his capability of performing the test properly would be markedly limited due to his advanced pulmonary disease. Wilhelm also asserts that the trial court erred in finding that

3. Our scope of review in a driver's license suspension case is limited to determining whether the findings of the trial court are supported by competent evidence, whether erroneous conclusions of law have been made or whether there has been a manifest abuse of discretion. *Department of Transportation v. Gross,* 146 Pa.Commonwealth Ct. 1, 605 A.2d 433 (1991).

Dr. Hackett was required to know the mechanical apparatus and requirements of the breathalyzer machine in order to make a determination as to his ability to perform the test, because such knowledge is an onerous burden.

■■ Initially we note that the law is well settled that the trial court is the ultimate fact-finder in driver license suspension appeals, and questions of credibility and conflicts in the evidence are for the trial court to resolve. *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). The factfinder, in this case the trial court, has the discretion to accept or reject any medical witness' testimony, in whole or in part, even if uncontradicted. *Kraemer v. Workmen's Compensation Appeal Board (Perkiomen Valley School District),* 82 Pa.Commonwealth Ct. 469, 474 A.2d 1236 (1984).[4] In this case, the trial court found Dr. Hackett's testimony insufficient to prove that Wilhelm's alleged pulmonary obstruction prevented him from properly performing the breathalyzer test. Our review of the record indicates the same.

■ When Dr. Hackett was first questioned as to his professional opinion regarding Wilhelm's ability to blow air into the breathalyzer machine, he responded, "Well, I—my opinion would be that his capability of doing that test would be markedly limited because of his advanced pulmonary disease." (Reproduced Record at 52.) However, "limited" does not mean incapable. Moreover, when further asked whether Wilhelm's condition would have prohibited him from blowing properly into the breathalyzer machine, he responded, "Well, I think his condition *could* have markedly adversely affected that." (Reproduced Record at 52.) Just as in other types of cases where the medical evidence must be unequivocal to support the complainant's contention,[5] so too is it necessary in a license suspension case to prove that the motorist's condition

---

4. For this reason, Wilhelm's argument that the trial court was obligated to find that he met his burden because Dr. Hackett's testimony was the only testimony presented and DOT did not rebut that testimony, is erroneous.

5. For example, in workmen's compensation cases where the connection between the injury and the employment is medical and medical testimo-

prevented him from performing the breathalyzer test. Equivocal statements that a motorist's condition "could" have or "may" have prevented him from performing the breathalyzer test properly are insufficient to meet that requirement.[6] Because Dr. Hackett failed to state unequivocally that Wilhelm's condition actually adversely affected his ability to perform the test, his supposition was not enough to prove Wilhelm's condition prevented him from submitting to the breathalyzer test.

Even if Dr. Hackett's testimony was not equivocal, his opinion that Wilhelm's limited breathing capacity prevented him from properly performing the breathalyzer test is meaningless. As to Dr. Hackett's familiarity with the breathalyzer machine and the requirements necessary for a proper reading, he stated the following:

Q. Are you familiar at all with a machine known as the Intoxilyzer 5000?

A. I've never seen one, but I've had it described to me.

Q. All right. Would you know what force of air it would take to blow into the machine to activate it?

A. No. (Reproduced Record at 56.)

Although totally unfamiliar with the machine, Dr. Hackett concluded that Wilhelm was incapable of performing the test because he had only 50% breathing capacity. Such a conclusion cannot be made without knowledge of the specific amount of breathing capacity required to perform the test properly. Although Wilhelm thinks it is an onerous burden for a doctor to obtain such information, without it the doctor's conclusions are meaningless.[7] As such, the trial court properly determined that Dr. Hackett's testimony was insufficient and Wil-

ny is necessary, the medical testimony must be unequivocal to establish the causal connection between the injury and the employment at the time the injury occurred. *Weaver v. Workmen's Compensation Appeal Board (Pennsylvania Power Co.)*, 87 Pa.Commonwealth Ct. 428, 487 A.2d 116 (1985).

6. *See Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985).

7. Also of interest is Dr. Hackett's response to being asked how someone's ability to breathe would be affected who had obstructive pulmonary disease and was intoxicated to any degree. He stated, "Well, alcohol is notoriously capable of reducing respiratory stimulation, so I

helm failed to prove he was physically incapable of performing the breathalyzer test.[8]

Consequently, because Wilhelm failed to prove by competent medical evidence that he was physically incapable of properly performing the breathalyzer test, his failure to properly perform the test more than once constituted a refusal. Accordingly, the decision of the trial court sustaining Wilhelm's one-year suspension is affirmed.

## ORDER

AND NOW, this 17th day of March, 1993, the order of the Court of Common Pleas of Elk County, dated July 30, 1992, No. 91–975, is affirmed.

certainly think that it would not help a situation in which a person was having pulmonary breathing difficulties prior to having alcohol." (Reproduced Record at 58.)

8. Wilhelm also argues that because he was physically incapable of properly performing the breathalyzer test and informed Trooper Sharer of this fact prior to submitting to the test, Trooper Sharer was required to offer him an alternative type of blood-alcohol test. However, not only have we already determined that Wilhelm failed to prove that he was physically incapable of performing the test making this argument moot, but this issue was not raised below and has been waived on appeal.