**Lester BRIDGES**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 4, 2000.

Decided May 26, 2000.

Bryan S. Neiderhiser and Timothy P. Wile, Asst. Counsel In-Charge, Pittsburgh, for appellant.

Martin M. Scoratow, Pittsburgh, for appellee.

Before PELLEGRINI, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

FLAHERTY, Judge.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) that sustained the statutory appeal of Lester Bridges (Licensee) from the Department's imposition of a one year suspension of his operating privilege due to his refusal to submit to chemical testing pursuant to Section 1547(b)(1) of the Vehicle Code (Code).[1] We reverse.

On August 26, 1998, Officer Holland of the City of Pittsburgh police department arrested Licensee for driving under the influence.[2] Licensee was transported to the City's centralized location for a breathalyzer test. Once there, a second officer, Officer Sampson, explained to Licensee the implied consent law. (N.T. at pp. 5, 6). The breath test was then administered several times to Licensee. Licensee attempted to comply with the test but he stopped each time stating that he could not complete it. (N.T. at pp. 6, 10, 13). A refusal was recorded because Licensee could not complete the test. At no time did Licensee inform the officers that he could not perform the test for any medical reason. (N.T. at 7, 10). Although he was aware at that time that he suffered from shortness of breath, Licensee was not aware that he suffered from a pulmonary disease or a breathing disorder. (N.T. at p. 12).

On September 25, 1998, Licensee was examined by Dr. Peter P. Tanzer, M.D. This was approximately one month after Licensee's arrest for driving under the influence. Dr. Tanzer testified on behalf of Licensee via deposition. Dr. Tanzer testified that he administered a pulmonary function test to Licensee which measures the capacity of the person to move air. (Deposition at p. 8). The pulmonary function test showed that Licensee suffered mild to moderate restriction in moving air. (Deposition at p.8). Dr. Tanzer opined that on August 26, 1998, Licensee would have had significant difficulty completing the breathalyzer test because of his lung disease. (Deposition at p. 10).

Dr. Tanzer also testified that he has only seen an Intoxilyzer or breathalyzer machine like the one used to test Licensee. (Deposition at p. 9). He stated that he was not aware of the exact forced expiratory volume required to satisfy the requirements of the Intoxilyzer test, that he was not aware of the period of time that a breath is needed to be maintained for the test or how hard a person needs to blow in order to satisfy the requirements of the test. (Deposition at pp. 11, 12). In response to the question of whether Licensee could have passed a test that required a period of blowing for five to ten seconds, Dr. Tanzer replied that Licensee's reduced ability to exhale would have made it more difficult to perform the test. (Deposition at pp. 14, 15).

By official notice dated September 25, 1998, the Department notified Licensee that his operating privileges were suspended for one year pursuant to Section 1547 of the Code for refusing to submit to chemical testing. Licensee appealed this suspension to the trial court. After a de novo hearing the trial court issued a decision sustaining Licensee's appeal. The trial court found Licensee's testimony credible and concluded that Licensee had made his

---

1. Section 1547(b)(1) provides:
   If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

2. There was no testimony from Officer Holland concerning the stop and the arrest because Licensee stipulated that the officer had reasonable grounds to stop him and arrest him for driving under the influence. (Note of Testimony from the February 25, 1999 trial (N.T.) at p. 4).

best efforts to supply the required breath samples but was prevented from doing so by the medical condition which he suffered at that time. In addition, the trial court accepted the medical reasoning provided by Licensee's physician. The Department appealed the decision to this Court.

The Department raises one issue for our review and that is whether the trial court erred as a matter of law in sustaining Licensee's appeal on the basis that Licensee was physically incapable of satisfactorily performing the breath test, when Licensee failed to present competent medical evidence to establish his purported inability.[3]

█ It is well settled that to sustain a license suspension under Section 1547 of the Code, the Department has the burden of establishing that the driver (1) was arrested for drunken driving by a police officer who had reasonable grounds to believe that the motorist was operating, or actually controlling or operating the movement of a motor vehicle, while under the influence of alcohol; (2) was requested to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal would result in a license suspension. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Once the Department meets this burden, the licensee must then establish that his refusal was not knowing or conscious or that he physically was unable to take the test. *Department of Transportation, Bureau of Driver Licensing v. Boucher*, 547 Pa. 440, 691 A.2d 450 (1997).

In this case it is undisputed that the Department has met its burden under *O'Connell.* Licensee admitted that there were reasonable grounds to arrest him for driving under the influence, that he was requested to submit to chemical testing, that he could not supply the breath samples needed[4] and that he was warned of the consequences of refusing chemical testing. Since the Department has met its burden, we must examine whether Licensee has met his burden of proving that he could not physically complete the breath test.

█ Whether the conduct as found by the trial court constitutes a refusal is a question of law reviewable by this Court. *Department of Transportation, Bureau of Driver Licensing v. Kilrain*, 140 Pa. Cmwlth. 484, 593 A.2d 932 (1991). In addition, the finding that a driver was unable to take the test for medical reasons must be supported by competent medical evidence. *Department of Transportation, Bureau of Driver Licensing v. Wilhelm*, 156 Pa.Cmwlth. 24, 626 A.2d 660 (1993). After examining the record under these guidelines, we must conclude that Licensee's inability to supply the required breath samples did constitute a refusal because the trial court's findings and conclusions that he was unable to do so due to medical reasons are not supported by substantial evidence and are an error of law.

█ The Department relies on *Hatalski v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 386 (Pa. Cmwlth.1995) where this Court held that where the licensee suffered from a medical condition whose existence was not obvious

3. Our review in a license suspension case is limited to determining whether the trial court's findings of fact are supported by competent evidence, errors of law were committed, or whether the trial court's decision demonstrates a manifest abuse of discretion. *Gombar v. Department of Transportation, Bureau of Driver Licensing*, 678 A.2d 843 (Pa. Cmwlth.1996).

4. It is well established that anything less than a licensee's unqualified, unequivocal assent to submit to chemical testing constitutes a refusal under Section 1547 of the Code. *Department of Transportation, Bureau of Traffic Safety v. Mumma*, 79 Pa.Cmwlth. 108, 468 A.2d 891 (1983). Even a licensee's good faith attempt to comply with the test constitutes a *per se* refusal where the licensee fails to supply a sufficient breath sample. *Pappas v. Department of Transportation, Bureau of Driver Licensing*, 669 A.2d 504 (Pa.Cmwlth.1996).

and affected the licensee's ability to perform the test, the licensee was required to inform the officer of the condition so an alternative chemical test could be performed. Because the officer was not so notified in *Hatalski,* the licensee was precluded from relying upon any such condition or inability as an affirmative defense to a suspension as a consequence of a test refusal. Here, the officers testified that Licensee did not inform them that he could not perform the test due to any sort of medical problem. Licensee did not contradict the officers' testimony. Although his testimony indicates that he was aware that he had been suffering from a shortness of breath, Licensee was never diagnosed with any pulmonary disease or a breathing disorder before the time he was required to submit to the breathalyzer test. It is not unreasonable for Licensee not to inform the officers of this shortness of breath since he had never been diagnosed with an abnormality prior to his attempting to give a breath sample, or that this shortness of breath was the reason that he could not complete the test. Although Licensee failed to inform the officers of this shortness of breath at the time of the test, he is not now precluded from relying on any such condition as an affirmative defense because he did not know that he had a condition which affected his ability to produce enough breath to complete the breathalyzer test. The trial court did not err as a matter of law when it did not consider Licensee's failure to inform the officers of his shortness of breath.

■ This Court has held that where a licensee fails to inform the police officer of a known medical problem that is preventing the successful completion of the test, the licensee is not permitted to present testimony to establish that a medical condition existed at the time of the test. *Finney v. Department of Transportation, Bureau of Driver Licensing,* 721 A.2d 420 (Pa.Cmwlth.1998). Although *Finney* does not permit testimony concerning a known medical condition, because Licensee was not aware of his medical condition, the deposition testimony of Dr. Tanzer that was presented by Licensee to show that he had a medical condition at the time of the test was properly considered by the trial court. Accordingly, the trial court did not err as a matter of law when it considered the doctor's deposition.

■ Finally, we address Dr. Tanzer's testimony concerning the breathalyzer test itself. A review of his testimony reveals that he did not provide substantial evidence necessary to support a finding that Licensee could not produce the breath necessary to successfully complete the test due to a medical condition. Dr. Tanzer testified that he was not aware of the exact forced expiratory volume required to satisfy the requirements of the breathalyzer test, that he was not aware of the period of time that a breath is needed to be sustained for the test or how hard a person needs to blow in order to satisfy the requirements of the test. Since *Wilhelm* holds that his lack of knowledge makes his testimony equivocal or incompetent because he did not know what lung capacity was required in order to perform the test, such evidence, being incompetent, cannot sustain the trial court's conclusion. Although Dr. Tanzer opined that Licensee would have had significant difficulty completing the breathalyzer test due to his pulmonary disease, the doctor was without knowledge of the specific amount of breathing capacity required by the particular machine used to perform the test properly. Mere difficulty in breathing does not mean that Licensee did not have the lung capacity to perform the test even with the acknowledgement of his medical condition.[5]

---

5. Unfortunately, the current state of the regulations promulgated by the Department compels the result in *Wilhelm,* which we are bound to follow. Without legislative action, a licensee with a breathing problem, such as asthma, pulmonary obstruction, etc., not only is compelled to find a physician that will examine and treat him, but also to make sure that the physician can, and will, obtain access to the same type of breathing machine used

Accordingly, we conclude that the trial court's conclusion that Licensee had a medical condition which prevented him from performing the test is not supported by substantial evidence.

Therefore, the order of the trial court is reversed.

## ORDER

AND NOW, this 26 th day of May, 2000, the order of the Court of Common Pleas of Allegheny County at 922 SA 1998, dated February 25, 1999, is reversed.

by the police in his test. It is not even known if the police will permit such access to their equipment, so an attorney may also have to be retained to obtain a court order to force the police to permit licensee's physician to access the machine used. Such an onerous burden for people with respiratory problems is, as a practical matter, only available to the moneyed class. The issue of its constitutionality was however, not raised. In the meantime, *Wilhelm* prevails which holds that although "such a burden may be onerous for a doctor to obtain such information, without it, the doctor's conclusions are meaningless."