John T. WHISTLER, Jr.

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTA- TION, BUREAU OF DRIVER LI- CENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 12, 2005.

Decided Sept. 9, 2005.

Timothy P. Wile, Asst. Counsel In–Charge and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

David M. Axinn, Hollidaysburg, for appellee.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the order of the Court of Common Pleas of Cambria County (trial court) sustaining the appeal of John T. Whistler Jr. (Licensee) from an eighteen-month suspension of his operating privileges. We reverse.

Licensee received a notice from DOT that his driving privileges had been suspended pursuant to 75 Pa.C.S. § 1547(b)(1)(ii). Section 1547(b)(1)(ii) provides that DOT is to suspend, for eighteen months, the license of any person who refuses to submit to chemical testing and who has been previously convicted of driving under the influence of alcohol (DUI).[1]

Licensee filed an appeal of the suspension to the trial court and a hearing was held. At the hearing, Licensee did not testify. However, he did stipulate that there were reasonable grounds to arrest him for DUI, that he received proper warnings and instructions from the police officers, that Officer John Herdman was a certified intoxilyzer operator, and that the machine was properly calibrated.

Officer Nicholas Zakucia of the Geistown Borough Police Department testified that he arrested Licensee for suspicion of DUI on March 24, 2004, and transported him to the police station. At the station, he observed that Licensee was intoxicated and boisterous. Licensee repeatedly yelled at the officers. Officer Zakucia stated that he watched Licensee perform the breathalyzer test and it appeared that he "was sucking on the hose instead of blowing into it." (R.R. at 9a).

He testified that Licensee stated "when he is backed into a corner, he feels that he has trouble breathing." (R.R. at 10a). He asked Licensee if he had a medical excuse and he stated he did not. Licensee did ask if he could have a blood test, but one was not provided.

---

1. Section 1547(b)(1)(B)(II) provides an eighteen-month suspension to licensees with a prior conviction under the former Section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731 (relating to driving under the influence of alcohol or a controlled substance). Section 1586 of the Vehicle Code, 75 Pa.C.S. § 1586, was amended, effective February 1, 2004, by replacing references to Section 3731 with references to Section 3802, 75 Pa.C.S. § 3802, of the "new" DUI Law. Licensee was convicted of DUI under former Section 3731 in 1999, 1989, and 1985. (R.R. at 61a–62a).

Officer Herdman, the intoxilyzer operator, also testified. He explained that he was obligated to observe Licensee for twenty minutes prior to implementing the breathalyzer test. During that time, Licensee was yelling obscenities and challenging Officer Zakucia to take off his handcuffs so they could fight. He stated that Licensee cursed and yelled continuously throughout the twenty-minute time period.

Officer Herdman explained that in order to give a valid sample, a licensee has to breathe into the machine for eight to fifteen seconds. When Licensee attempted to take the test, Officer Herdman observed him blow into it for two to three seconds and then he would start sucking air back. The instrument would then not accept the breath sample. Officer Herdman testified that he gave Licensee seven opportunities to provide a valid breath sample. Licensee failed to provide one each time.

Officer Herdman stated that Licensee did not appear to have any problems breathing and he did not recall that Licensee ever coughed when attempting to take the test. He asked Licensee if he have any medical conditions and Licensee stated that he did not.

The deposition testimony of Stephen Hoffman M.D. was provided on behalf of Licensee. Dr. Hoffman testified that he had a family practice and first met with Licensee on June 9, 2004. At that time, Licensee stated that he had become progressively short of breath over the years and had a morning cough. Upon examination, Dr. Hoffman concluded that Licensee had a lot of wheezing on the right side of his chest and became short of breath if walking rapidly. He noted that Licensee is a heavy smoker.

Dr. Hoffman stated that Licensee discussed the breathalyzer test with him. Licensee told him that prior to the test, he had been exposed to a significant amount of tobacco smoke and was under some emotional stress. Dr. Hoffman found that Licensee suffers from anxiety and that could cause his airways to tighten and make breathing difficult.

Dr. Hoffman stated that he ordered a pulmonary function test and a chest x-ray, but he had yet to receive the results. However, he opined that Licensee has advanced pulmonary disease and could not physically perform the breathalyzer test due to his prior exposure to smoke and his emotional issues. He stated that the exposure to smoke and increased anxiety would cause a worsening of his disease. Dr. Hoffman concluded that Licensee "probably would have a difficult time performing that test adequately, and to do so without medications might have provoked a worsening of the disease." (R.R. at 37a). He stated that a worsening of the disease would involve more tightness of breath and an individual could even begin to appear blue.

Dr. Hoffman agreed that he had diagnosed Licensee with advanced pulmonary lung disease based solely on Licensee's history and that he had prescribed tests, but the results have not yet been made available. In fact, Dr. Hoffman was not sure if the tests had even yet been performed.

Dr. Hoffman was asked if he was familiar with the BAC Datamaster. Dr. Hoffman stated that he knew it was used to gauge how much alcohol is in a person's system, but did not know what force of air is necessary to get a reading on the machine. Dr. Hoffman also was asked if he was treating Licensee for anxiety. He replied that he was not treating Licensee for anxiety and did not prescribe any anxiety medication to him.

■ The trial court determined that, based on Dr. Hoffman's opinion and the fact that Licensee attempted to take the test seven times, Licensee did not refuse the test. As such, Licensee's appeal was granted. DOT then appealed to this Court, alleging that Licensee refused the test and it was error for the trial court to grant the appeal.[2]

■ In cases such as this, DOT has the initial burden of establishing that: (1) the licensee was properly stopped by police; (2) he was requested to submit to testing; (3) he refused; and (4) he was warned that a refusal would result in a suspension of his license. *Com., Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). In the present case, it was stipulated that DOT met the above requirements. Once DOT has met its burden, the licensee has the obligation to establish that his refusal was not knowing or that he was physically unable to take the test. *Bridges v. Department of Transportation, Bureau of Driver Licensing*, 752 A.2d 456 (Pa.Cmwlth.2000).

■ DOT first alleges that Licensee cannot now claim he was physically unable to take the test, when at the time of the test he failed to inform the officers that he had any medical problems. This issue has been previously addressed by the Court.

In *Finney v. Deparment of Transportation, Bureau of Driver Licensing*, 721 A.2d 420 (Pa.Cmwlth.1998), we held that a licensee has an obligation to inform the police of any known medical conditions that were not obvious and affected his ability to perform the test. However, we revisited this ruling in *Bridges*, and clarified that it only applied to known medical conditions.

In *Bridges*, the licensee did not inform police that he suffered from shortness of breath at the time of the testing because, at the time of the testing, he had never been diagnosed with a pulmonary disease or a breathing disorder. We concluded that the licensee was "not now precluded from relying on any such condition as an affirmative defense because he did not know that he had a condition which affected his ability to produce enough breath to complete the breathalyzer test." *Bridges*, 752 A.2d at 460.

Dr. Hoffman testified that Licensee did not seek medical treatment regarding his breathing difficulties until months after he submitted to the breathalyzer test. As such, it was proper for the trial court to consider the deposition testimony of Dr. Hoffman in order to conclude whether Licensee had an unknown medical condition that affected his ability to submit to the breathalyzer test.

■ DOT next alleges that the finding that Licensee was physically incapable of completing the breath test as a result of his pulmonary disease was not supported by competent medical evidence. Specifically, DOT argues that Dr. Hoffman's ignorance of how much air the BAC Datamaster required Licensee to expel or how long Licensee was required to blow into it, rendered his opinion incompetent.

In *Bridges*, Dr. Peter Tanzer, M.D., testified that he performed a pulmonary function test on a licensee and determined that he had mild to moderate lung disease. Dr. Tanzer stated that he was not aware of the force required to satisfy the requirements

**2.** Our scope of review in a driver's license suspension case is limited to determining whether the findings of the trial court are supported by competent evidence, whether errors of law were committed or whether there has been a manifest abuse of discretion. *Department of Transportation v. Gross*, 146 Pa.Cmwlth. 1, 605 A.2d 433 (1991).

of the breathalyzer test. He also stated he was not familiar with the period of time that a breath must be sustained or how hard a licensee has to blow to perform the test. However, he concluded that the licensee's breathing problems would have made it difficult for him to perform the test. This Court determined that Dr. Tanzer's lack of knowledge rendered his testimony incompetent as he was unaware of the lung capacity necessary to perform the test.

In the present action, Dr. Hoffman was also unaware of the amount of force necessary to perform the test and testimony was not provided as to whether he was aware of the period of time that a breath needed to be sustained. Furthermore, Dr. Hoffman only concluded that Licensee "probably" would have a difficult time performing the test. A licensee is obligated to show that his medical condition rendered him physically unable to perform the test. "Equivocal statements that a motorist's condition 'could' have or 'may' have prevented him from performing the breathalyzer test properly are insufficient to meet that requirement." *Department of Transportation, Bureau of Driver Licensing v. Wilhelm,* 156 Pa.Cmwlth. 24, 626 A.2d 660, 663 (1993). As such, we conclude that the trial court determination that Licensee had a medical condition which prevented him from performing the breathalyzer test was not supported by competent evidence of record.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 9th day of September, 2005, the order of the Court of Common Pleas of Cambria County is reversed.