IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arnell Alan Cobb,            :
                                         : No. 2644 C.D. 2015
                 Appellant     : Submitted: October 21, 2016
                                         :
               v.                      :
                                         :
Commonwealth of Pennsylvania,     :
Department of Transportation,      :
Bureau of Driver Licensing         :


BEFORE:     HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED: December 12, 2016


Arnell Alan Cobb (Licensee) appeals the order of the Luzerne County Court of Common Pleas (trial court) dismissing his statutory appeal from an 18-month suspension of his operating privileges imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) under Section 1547(b)(1)(ii) of the Vehicle Code,[1] and from a 1-year

---

[1] 75 Pa. C.S. §1547(b)(1)(ii). Section 1547(b)(1)(ii) sets forth the following penalties that may be imposed if a licensee refuses to consent to chemical testing to determine his blood alcohol content:

       **(b) Suspension for refusal.—**

       (1) If any person placed under arrest for a violation of section 3802
       is requested to submit to chemical testing and refuses to do so, the
**(Footnote continued on next page…)**

disqualification of his privilege to drive a commercial motor vehicle under Section 1613(d.1),[2] based on his refusal to submit to chemical testing in connection with his arrest for violating Section 3802 of the Vehicle Code[3] (relating to driving under the influence (DUI) of alcohol or controlled substance).  We affirm.

_____

**(continued…)**

> testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
>
> * * *
>
> (ii) For a period of 18 months if any of the following apply:
>
> * * *
>
> (B) The person has, prior to the refusal under this paragraph, been sentenced for:
>
> (I) an offense under section 3802[.]

Licensee's Certified Driving Record shows that he had been previously sentenced for violating Section 3802 at the time of his refusal.  Reproduced Record (R.R.) at 62a, 80a.

[2] 75 Pa. C.S. §1613(d.1).  Section 1613(d.1) states, in relevant part, that "[u]pon receipt of a report of test refusal, the department shall disqualify the person who is the subject of the report for the same period as if the department had received a report of the person's conviction for violating one of the offenses listed in Section 1611(a)."  In turn, Section 1611(a)(1) provides, in pertinent part, that "[u]pon receipt of a report of conviction the department shall, in addition to any other penalties imposed under this title, disqualify any person from driving a commercial motor vehicle or school vehicle for a period of one year for the first violation of . . . section 3802 . . . ."  75 Pa. C.S. §1611(a)(1).  Licensee's Certified Driving Record shows that he did not have a commercial license at the time that he was previously convicted for violating Section 3802.  R.R. at 62a, 80a.

[3] 75 Pa. C.S. §3802.

On August 10, 2015, Licensee was arrested by an officer with the Wilkes-Barre Police Department on suspicion of DUI and was asked to submit to a breathalyzer test which would be used to determine his blood alcohol content. However, after he was given the implied consent and *O'Connell*[4] warnings provided on the Department's Form DL-26,[5] Licensee refused to provide a breath sample.

---

[4] *See Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 878 (Pa. 1989) ("[W]here an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.").

[5] The DL-26 form contains the implied consent warnings required by Section 1547 of the Vehicle Code and *O'Connell*. The form advises police officers to read the following warnings in their entirety to a motorist:

> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of <u>Breath</u> (blood, breath, or urine. The arresting officer chooses the chemical test).
>
> 3. If you refuse to submit to the chemical test your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you'll be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test and you're convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of

**(Footnote continued on next page…)**

3

As a result, Licensee received notice from the Department that his operating privilege was suspended for a period of 18 months pursuant to Section 1547(b)(1)(ii) of the Vehicle Code, and he was disqualified from operating a commercial vehicle for 1 year pursuant to Section 1613(d.1), for his refusal to submit to testing. Licensee appealed the license suspension to the trial court.

At the hearing in the trial court, the Department entered into the record Licensee's Certified Driving record. The parties also stipulated that the Department had sustained its initial burden of demonstrating that his operating privilege should be suspended under Section 1547 by showing that he: (1) was arrested for DUI by a police officer who had reasonable grounds to believe that he was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol in violation of Section 3802; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that his refusal might result in a license suspension and would result in enhanced penalties if he was later convicted of violating Section 3802. *See Martinovic v. Department of Transportation*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005).

---

**(continued…)**

$1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.00.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to the testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test.

R.R. at 71a.

4

Licensee did not testify, but argued that he did not make a knowing and conscious decision to refuse the chemical testing because he was physically incapable of submitting to the chemical testing of his breath because he suffers from an obstructive lung disease. In support, Licensee presented the testimony of Cathy L. Young, M.D. (Dr. Young), a physician board certified in internal medicine, pulmonary medicine, and critical care medicine, who was qualified as an expert in pulmonology. N.T.[6] at 3-4. As the trial court found:

> Dr. Young indicated she examined [Licensee] on August 27, 2015, seventeen days after his arrest on August 10, 2015. She determined he needed to undergo pulmonary function testing which was conducted on that date and "showed that he had moderately severe obstructive lung disease. He had normal lung volumes and normal diffusion capacity. These tests show basically an obstructive lung disease because of the reversibility with the bronchodilator most consistent with asthma." (N.T. [at] 5).

> The witness was asked whether that kind of ailment or disease would prevent him from being able to expel volumes of air required for a breath test. Dr. Young responded, "If someone was having a significant asthma exacerbation at the time, he could not have blown hard enough in the device to get a reading." ([*Id.*]).

> The doctor further testified that [Licensee] had a follow up appointment the week before the hearing and was placed on Symbicort and also given a rescue inhaler.

> During cross-examination, the physician was asked whether [Licensee] related what happened on August 10, 2015, and responded, "He basically said to me at that time he felt he could not blow into the machine and he was having difficulty with his breathing." ([*Id.* at] 6).

---

[6] "N.T." refers to the transcript of the trial court hearing.

5

When asked whether alcohol would affect the Licensee's ability to make a significant or sufficient sample of his breath the expert responded, "It might from a mental standpoint make it difficult for him to do the test properly, but given enough tries it's not going to mess up his airflow to be able to do the test." ([*Id.* at] 7).

When specifically asked whether the doctor knew if [Licensee] was having an episode or a pulmonary event on August 10, 2015, she replied, "I do not know. I was not there." The witness was next asked whether she could render an opinion within a reasonable degree of medical certainty that alcohol consumption was not a contributing factor to [Licensee]'s inability to make a sufficient sample, and replied, "Simply as a pulmonologist I can't say anything about that." ([*Id.*]).

Trial Court 3/4/16 Opinion at 6-7.

The trial court denied Licensee's appeal, explaining that it rejected Licensee's expert testimony because it was "equivocal" and "insufficient to establish a knowing and conscious refusal." Trial Court 3/4/16 Opinion at 8. Regarding Dr. Young's testimony, the trial court noted "that she did not rule out alcohol as a contributing factor to the licensee's inability to offer a knowing and conscious refusal," and that she "related no history taken from the licensee, no identification of or review of any of his medical records and no examination of any investigative report or probable cause affidavit." *Id.* The trial court concluded that "[t]he record in the instant matter clearly establishes, by stipulation, that [the Department] satisfied the four criteria to suspend the operating privilege of [Licensee] pursuant to Section 1547," and that "the evidence offered by [Licensee] is categorically insufficient in establishing that he was unable to provide a knowing and conscious refusal to submit to chemical testing." *Id.* As a result, the trial court issued the instant order dismissing Licensee's statutory appeal.

6

On appeal,[7] Licensee argues that his operating privileges should be reinstated because Dr. Young's unequivocal and competent medical testimony showed that he was physically unable to submit to the requested breath test due to his pulmonary disease and, as a result, his refusal was not knowing and conscious. Alternatively, Licensee asserts that the trial court erred in failing to find facts relating his physical inability to perform the test.

Once the Department's burden is met under Section 1547, a licensee may avoid the mandatory license suspension by proving that: (1) he was physically incapable of completing the requested testing; and (2) his refusal was not knowing and voluntary. *Martinovic*, 881 A.2d at 34.[8] Additionally, a licensee has a duty to inform the police of any known medical conditions that are not obvious which affects his ability to perform a chemical test. *Whistler v. Department of Transportation, Bureau of Driver Licensing*, 882 A.2d 537, 540 (Pa. Cmwlth. 2005); *Finney v. Department of Transportation, Bureau of Driver Licensing*, 721 A.2d 420, 424 (Pa. Cmwlth. 1998). The purpose of this notification

---

[7] This Court's scope of review is limited to determining whether necessary findings of the trial court are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Martinovic*, 881 A.2d at 34 n.6. As the fact finder, the trial court makes the necessary credibility determinations and may accept or reject the testimony of any witness in whole or in part; its determinations in this regard are not subject to our review. *Finney v. Department of Transportation, Bureau of Driver Licensing*, 721 A.2d 420, 423 (Pa. Cmwlth. 1998).

[8] *See also Marinaro v. Department of Transportation, Bureau of Driver Licensing*, 703 A.2d 1066, 1068 (Pa. Cmwlth. 1997) ("Dr. Singer testified on cross-examination that Licensee suffered from symptoms of epigastric discomfort which included abdominal pain, excess secretion of acidic substances, chest pain and shortness of breath at the time he was requested to submit to chemical testing. The doctor testified that all of these conditions were manifestations of Licensee's medical condition of hyperventilation, a stress-induced condition. . . . Dr. Singer's testimony was unequivocal, and it established the requisite nexus between Licensee's medical condition and his inability to complete the required testing.").

requirement is so that an alternative form of chemical testing that the licensee could perform can be administered. *Berman v. Department of Transportation, Bureau of Driver Licensing*, 842 A.2d 1025, 1027-28 (Pa. Cmwlth. 2004). Where a licensee fails to inform the police officer administering the breathalyzer test that he suffers from a medical condition preventing successful completion of the test, the licensee is not permitted to present testimony to establish that the medical condition allegedly existed at the time of the test. *Finney*, 721 A.2d at 424; *Hatalski v. Department of Transportation, Bureau of Driver Licensing*, 666 A.2d 386, 390 (Pa. Cmwlth. 1995). In other words, "[i]f the officer was not so notified, the licensee is precluded from relying upon any such condition or inability as an affirmative defense to a suspension as a consequence of a test refusal." *Hatalski*, 666 A.2d at 390. The only exception under which a licensee is not precluded from relying on such condition as an affirmative defense is where "he did not know that he had a condition which affected his ability to produce enough breath to complete the breathalyzer test." *Bridges v. Department of Transportation, Bureau of Driver Licensing*, 752 A.2d 456, 460 (Pa. Cmwlth. 2000).[9]

Although Dr. Young testified that Licensee could not have blown hard enough in the breathalyzer to get a reading if he was "having a significant asthma exacerbation at the time" of testing,[10] Licensee did not present any competent

---

[9] In *Bridges*, a refusal was recorded after the licensee had attempted to perform the breathalyzer test on several occasions, but stopped each time stating that he could not complete it. 752 A.2d at 458. The circumstances underlying Licensee's refusal in the instant matter are not part of the certified record so there is no indication whether Licensee attempted to comply with the officer's request to submit to the breathalyzer test or whether he refused outright to comply.

[10] N.T. at 5.

8

evidence that he was experiencing such an exacerbation at the time of testing; that he communicated such to the officer administering the test; or that he was unaware of his pulmonary disease at that time. In the absence of such evidence, Licensee was precluded from presenting Dr. Young's testimony to establish that he suffered from the pulmonary disease or relying upon it as an affirmative defense to the suspension and disqualification based upon his refusal to submit to the breathalyzer test.[11] As a result, the trial court did not err in determining that Licensee failed to sustain his burden of proving that he was physically incapable of completing the requested testing at the time of testing and that his refusal at that time was not knowing and voluntary.[12]

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

[11] Moreover, unlike the medical testimony in *Marinaro*, Dr. Young's testimony does not establish the required nexus between Licensee's medical condition and his inability to complete the required testing because Dr. Young could not state whether Licensee was having an episode or a pulmonary event at the time of testing. *See* N.T. at 7.

[12] This Court may affirm the trial court's order on any basis appearing in the record. *Wright v. Department of Transportation*, 596 A.2d 1241, 1246 (Pa. Cmwlth. 1991), *appeal denied*, 607 A.2d 258 (Pa. 1992).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Arnell Alan Cobb, : 
    : No. 2644 C.D. 2015
            Appellant : 
    : 
        v. : 
    : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

O R D E R

AND NOW, this 12<u>th</u> day of <u>December</u>, 2016, the order of the Luzerne County Court of Common Pleas dated November 24, 2015, at No. 9854 of 2015 is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge