# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Wayne Shiring                     :
                                       :
        v.                             :   No. 1073 C.D. 2018
                                       :   SUBMITTED:  March 15, 2019
Commonwealth of Pennsylvania,          :
Department of Transportation,          :
Bureau of Driver Licensing,            :
                  Appellant            :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                       FILED:  May 14, 2019


The Department of Transportation, Bureau of Driver Licensing (DOT), appeals from the July 12, 2018 Order of the Court of Common Pleas of Allegheny County (Trial Court) sustaining the appeal of John Wayne Shiring (Licensee) from DOT's 18-month suspension of his operating privilege under Section 1547(b)(1)(ii) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(ii).[1]  For the reasons that follow, we reverse the Trial

---

[1] Section 1547(b)(1)(ii) of the Vehicle Code provides:

If any person placed under arrest for a violation of [S]ection 3802 [of the Vehicle Code (relating to driving under influence of alcohol or controlled substance (DUI))] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person . . . [f]or a period of 18 months [for a second DUI offense] . . . .

75 Pa. C.S. § 1547(b)(1)(ii).  Licensee was previously convicted of DUI in June 2011.  *See* Notes of Testimony (N.T.), 7/12/18, Ex. 3.

Court's Order and direct DOT to reinstate the 18-month suspension of Licensee's operating privilege.

## Background

On February 15, 2017, Officer Aaron Loughran of the City of Pittsburgh Police Department was on patrol when he noticed a vehicle traveling in the middle of the road. After following the vehicle for several blocks, Officer Loughran stopped the vehicle, which was being driven by Licensee. When Licensee opened the window, Officer Loughran smelled an odor of alcohol coming from the vehicle. Licensee produced his driver's license but was unable to locate his vehicle registration and proof of insurance.

Officer Loughran asked Licensee to step out of the vehicle and perform three field sobriety tests: the finger-to-nose test, the nine-step walk-and-turn test, and the one-leg-stand test. Licensee did not correctly perform any of the tests. Officer Loughran took Licensee into custody for suspicion of DUI.

Officer Loughran transported Licensee to the Police Department's Zone Special Deployment Division, where Officer Loughran transferred custody of Licensee to Officer Dale Ruble. Officer Ruble asked Licensee to perform additional field sobriety testing, but Licensee refused. Officer Ruble then read the implied consent warnings to Licensee from DOT's DL-26A Form. After Officer Ruble read the warnings to Licensee, Licensee consented to a breath test.

Officer Ruble administered two breath tests to Licensee using the DataMaster DMT breathalyzer machine. Officer Ruble was a certified operator of the DataMaster DMT breathalyzer machine. The machine was properly functioning, calibrated, and certified for accuracy.

Before administering the breath tests, Officer Ruble instructed Licensee how to provide a valid breath sample, directing him to make a good seal over the tube and breathe into the tube with one continuous long breath. During the first test, Licensee

2

provided multiple short breaths rather than one continuous long breath, so the machine registered a refusal. Officer Ruble again instructed Licensee how to submit a valid breath sample. During the second test, Licensee again provided short breaths, so the machine registered a refusal. Because Licensee did not satisfactorily complete either breath test, Officer Ruble recorded that Licensee refused chemical testing.

On April 13, 2017, DOT suspended Licensee's operating privilege for a period of 18 months, effective May 18, 2017, under Section 1547(b)(1)(ii) of the Vehicle Code. Licensee timely appealed to the Trial Court, which held a *de novo* hearing on July 12, 2018. At the hearing, DOT presented the testimony of Officers Loughran and Ruble, and Licensee testified on his own behalf.

Officer Loughran testified that "[w]hen [Licensee] first stepped out [of the vehicle] . . . [he] sort of lost his balance a little bit and I asked if he was okay. I thought maybe he was injured or something but it was just – he said he was fine, he was just 70 years old, that's all." N.T., 7/12/18, at 7. Officer Loughran testified that he administered three field sobriety tests to Licensee at the scene, but Licensee failed all three tests. *Id.* at 7-10.

Officer Ruble, who administered the breath tests to Licensee, testified that he did not recall Licensee advising him that he suffered from any medical condition that would have prevented him from providing the required breath samples. *Id.* at 27. He also testified that he did not observe Licensee wheezing or gasping for breath or in any apparent respiratory distress. *Id.* at 27-28. DOT's counsel admitted into evidence the printouts from the breathalyzer machine showing the results of Licensee's two breath tests. *Id.* at 26-27.[2]

---

[2] Licensee's counsel objected to the admission of the breathalyzer test results. N.T., 7/12/18, at 26. The Trial Court noted the objection but admitted them into evidence. *Id.* at 27.

3

Officer Ruble testified that Licensee never told him that he did not understand the implied consent warnings on the DL-26A Form or that he did not understand the instructions for completing a valid breath sample. *Id.* at 28. On cross-examination, Officer Ruble stated that Licensee did not expressly refuse to take the breath test, *id.* at 29, and admitted that Licensee "did make some attempt at a sample," *id.* at 32. Officer Ruble further testified that he was "sure" that he asked Licensee if he had any physical problems or was taking any medications because he "always" asks that question. *Id.* at 32.

Licensee testified that he recalled Officer Ruble reading the DL-26A Form to him, but he did not refuse the breath test. *Id.* at 36. Licensee testified that, at that time, he smoked heavily and his smoking affected his breathing. *Id.* at 37. Licensee also testified that he had hiatal hernia surgery on April 16, 2018 and he believed the surgery affected his breathing. *Id.* Licensee's counsel clarified, however, that Licensee's hernia surgery actually occurred on January 18, 2017, one month before the traffic stop. *Id.* at 38.[3] Licensee then testified as follows:

> [Counsel:] As a result of the [hernia] surgery[,] were you having any physical problems?
>
> [Licensee:] Yes.
>
> [Counsel:] Did you explain any of this to the officer?
>
> [Licensee:] No, not at that time.
>
> . . .

---

[3] With regard to the hernia surgery, Licensee's counsel also stated, "We have a letter here, clearly . . . we can't afford to bring the doctor in[,] to be honest with you." N.T., 7/12/18, at 39. No such letter was admitted into evidence.

4

[Counsel:] And as a result of these physical problems . . ., what other problems did you have physically besides the smoking and hernia, anything?

[Licensee:] Well, I've just been sick for the last two years, Your Honor. Since I retired it's one thing after another.

*Id.* at 39.

On cross-examination, Licensee admitted that he did not inform Officer Ruble at the time of the test that he was experiencing any breathing problems due to being a heavy smoker. *Id.* at 40. He also admitted that he did not inform Officer Ruble of any breathing problems resulting from his recent hernia surgery. *Id.* Licensee testified that Officer Ruble "probably asked me [about any illnesses or injuries] at the time," but "it just didn't occur to me." *Id.* at 41.

At the conclusion of the hearing, the Trial Court sustained Licensee's appeal. *Id.* at 44. In its subsequent Pa. R.A.P. 1925(a) Opinion, the Trial Court explained its reasoning as follows:

> There was uncontroverted evidence that [Licensee], who was 70 years old, had a surgical procedure for a hernia on January 18, 2017, which was only about [one] month before Officer Ruble conducted the breathalyzer test on February 15, 2017. This Court found [Licensee's] testimony that he performed the breath tests to the best of his ability to be credible. . . .

> . . .

> The issue here is whether [Licensee] refused to submit to a chemical breath test by providing insufficient samples. A licensee must be given a meaningful opportunity to complete the breath test. Here, although [Licensee] was given two opportunities to complete the breathalyzer test, he had recently undergone surgery, which could explain his inability to provide an adequate breath sample.

5

Trial Ct. Op., 10/25/18, at 3-4 (internal citation omitted). DOT now appeals to this Court.[4]

## Issue

Did the Trial Court err in sustaining Licensee's appeal, where Licensee failed to inform Officer Ruble of any breathing problems at the time of the breath test and failed to sustain his burden of proving that he was physically unable to complete a breath test?

## Analysis

To support the suspension of a licensee's operating privilege under Section 1547(b)(1)(ii) of the Vehicle Code, DOT must prove that the licensee: (1) was arrested for DUI by an officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol in violation of Section 3802 of the Vehicle Code; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that his refusal might result in a license suspension and would result in enhanced penalties if he were later convicted of DUI. *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005). Once DOT satisfies its burden of proof, the burden shifts to the licensee to prove that either: (1) his refusal was not knowing and conscious; or (2) he was physically incapable of completing the chemical test. *Id.*; *see Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010).

DOT first argues that the Trial Court erred in concluding that because Licensee "performed the breath tests to the best of his ability," Trial Ct. Op., 10/25/18, at 4, DOT failed to prove that Licensee refused chemical testing. We agree.

---

[4] In an appeal arising from a suspension of a licensee's operating privilege, our scope of review is limited to determining whether the Trial Court's decision is supported by substantial evidence, whether there has been an error of law, or whether the Trial Court manifestly abused its discretion. *Pappas v. Dep't of Transp., Bureau of Driver Licensing*, 669 A.2d 504, 507 n.4 (Pa. Cmwlth. 1996).

The evidence established, and the Trial Court found, that although Licensee attempted to provide two breath samples, he did not successfully complete either breath test. This Court has held that the "failure to complete a breathalyzer test, *whether or not a good faith effort was made to do so*, constitutes a refusal *per se* to take the test." *Sweeney v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 685, 687 (Pa. Cmwlth. 2002) (emphasis added). Even a good faith attempt to comply with the test constitutes a refusal if the licensee fails to supply a sufficient breath sample, absent a proven medical reason that precludes him from doing so. *Id.*; *see Quick v. Dep't of Transp., Bureau of Driver Licensing*, 915 A.2d 1268, 1271 (Pa. Cmwlth. 2007) ("[A] licensee's failure to provide two consecutive sufficient breath samples as required by 67 Pa. Code § 77.24(b) (relating to breath test procedures), absent a proven medical reason that precludes the licensee from so doing, constitutes a refusal of the breath test as a matter of law."); *Dep't of Transp., Bureau of Driver Licensing v. Kilrain*, 593 A.2d 932, 935 (Pa. Cmwlth. 1991) ("Anything less than a completed breathalyzer test which registers a blood alcohol reading on the breathalyzer constitutes a refusal."). Therefore, in light of our well-established law, we conclude that the Trial Court erred in determining that because Licensee made a good faith attempt to complete the breath tests, his failure to do so was not a refusal.

Next, DOT contends that the Trial Court erred in concluding that Licensee established a valid medical reason for failing to complete the breath tests because Licensee failed to inform Officer Ruble that he had any medical problems at the time of the testing. We agree.

It is well settled that a licensee has a duty to inform the police officer of any known medical conditions that are not obvious and may affect his ability to perform the requested chemical test. *Whistler v. Dep't of Transp., Bureau of Driver Licensing*, 882 A.2d 537, 540 (Pa. Cmwlth. 2005); *Bridges v. Dep't of Transp., Bureau of Driver*

7

*Licensing*, 752 A.2d 456, 460 (Pa. Cmwlth. 2000); *Finney v. Dep't of Transp., Bureau of Driver Licensing*, 721 A.2d 420, 424 (Pa. Cmwlth. 1998). "[T]he reason for requiring a licensee to inform an officer of a medical condition that could affect the licensee's ability to complete one kind of test is to obtain results through a different chemical test." *Martin v. Dep't of Transp., Bureau of Driver Licensing*, 20 A.3d 1250, 1253 (Pa. Cmwlth. 2011).

If the licensee fails to inform the police officer administering the chemical test that he suffers from a medical condition preventing successful completion of the test, the licensee is not permitted to present testimony to establish that the medical condition allegedly existed at the time of the test. *Finney*, 721 A.2d at 424; *Hatalski v. Dep't of Transp., Bureau of Driver Licensing*, 666 A.2d 386, 390 (Pa. Cmwlth. 1995). In other words, "[i]f the officer was not so notified, *the licensee is precluded from relying upon any such condition or inability as an affirmative defense* to a suspension as a consequence of a test refusal." *Hatalski*, 666 A.2d at 390 (emphasis added). The only exception under which a licensee may rely on a medical condition as an affirmative defense is where the licensee "did not know that he had a condition [that] affected his ability to produce enough breath to complete the breathalyzer test." *Bridges*, 752 A.2d at 460.

Here, Officer Ruble testified that he did not observe any indication that Licensee suffered from a medical condition that prevented him from completing a breath test. N.T., 7/12/18, at 27-28. Officer Ruble also testified that he did not recall Licensee ever telling him that he suffered from a medical condition that prevented him from completing a breath test. *Id.* at 28. Licensee testified that, at the time of the test, he was a heavy smoker and had recently undergone hernia surgery, both of which negatively impacted his breathing. *Id.* at 37. Licensee admitted, however, that he did not inform Officer Ruble that he was suffering from any physical problems at the time

8

of the test. *Id.* at 39-41. Because the uncontroverted evidence established that Licensee did not inform Officer Ruble of any breathing problems at the time of the test, Licensee was precluded from raising the affirmative defense that he was physically incapable of completing a breath test. *See Finney*, 721 A.2d at 424; *Hatalski*, 666 A.2d at 390. Therefore, we conclude that the Trial Court erred in sustaining Licensee's appeal based on that affirmative defense.

In any event, even if Licensee had informed Officer Ruble of his medical condition at the time of the test, we would conclude that Licensee failed to satisfy his burden of proving that he was physically incapable of completing a breath test. Our Court has stated that "where a licensee suffers from a medical condition that affects his ability to perform the test and that condition is not obvious, [a] finding that [the licensee] was unable to take the test for medical reasons must be supported by *competent medical evidence*." *Lemon v. Dep't of Transp., Bureau of Driver Licensing*, 763 A.2d 534, 538 (Pa. Cmwlth. 2000) (emphasis added); *see Pappas*, 669 A.2d at 508.

The only evidence Licensee offered to prove the existence of his medical condition was his own testimony that he was a heavy smoker and that he underwent hernia surgery one month before the breath test. Based on that testimony alone, which the Trial Court credited, the Trial Court found that Licensee "had recently undergone surgery, which *could* explain his inability to provide an adequate breath sample." Trial Ct. Op., 10/25/18, at 4 (emphasis added). However, "[e]quivocal statements that a motorist's condition 'could' have or 'may' have prevented him from performing the breathalyzer test properly are insufficient to meet th[e] requirement [of competent medical evidence]." *Dep't of Transp., Bureau of Driver Licensing v. Wilhelm*, 626 A.2d 660, 663 (Pa. Cmwlth. 1993). This Court has long held that a licensee's "simple declaration of incapacity to perform a chemical test, *without medical proof*, will not

justify a refusal." *Wright v. Dep't of Transp., Bureau of Driver Licensing*, 788 A.2d 443, 447 (Pa. Cmwlth. 2001) (emphasis added).

Here, Licensee offered no medical evidence whatsoever to establish the existence of his alleged breathing problems or their impact on his ability to provide a valid breath sample. Therefore, we conclude that the Trial Court's determination that Licensee's recent hernia surgery prevented him from completing the breath tests is unsupported by competent evidence. *Cf. Dep't of Transp. v. Gross*, 605 A.2d 433, 436 (Pa. Cmwlth. 1991) ("[W]hile the trial court was justified in determining that [the licensee's] testimony was credible, it erred by concluding that her testimony was competent.").

### Conclusion

Accordingly, we reverse the Trial Court's Order and direct DOT to reinstate the 18-month suspension of Licensee's operating privilege.

_____
ELLEN CEISLER, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Wayne Shiring     :
          :
   v.       : No. 1073 C.D. 2018
          :
Commonwealth of Pennsylvania, :
Department of Transportation,  :
Bureau of Driver Licensing,   :
      Appellant :

# **O R D E R**

AND NOW, this 14th day of May, 2019, the Order of the Court of Common Pleas of Allegheny County, dated July 12, 2018, is hereby REVERSED, and the Department of Transportation, Bureau of Driver Licensing, is hereby directed to reinstate the 18-month suspension of John Wayne Shiring's operating privilege.

          _____
          ELLEN CEISLER, Judge